365 S.E.2d 793

**Ken HECHLER, Secretary of State, A. James Manchin, Treasurer of State, and Charles G. Brown, Attorney General**

v.

**John F. McCUSKEY, Commissioner of Finance and Administration, et al.**

No. 17958.

Supreme Court of Appeals of West Virginia.

Dec. 9, 1987.

Stephen D. Herndon, Sol. Gen., for petitioners.

NEELY, Justice:

The General Services Division of the Department of Finance and Administration provides mail service for all state agencies in the Capitol Complex. The enabling legislation for central mailing was passed in 1934. *W. Va. Code*, 5A–4–2 [1934] *et seq.* The central mailing office was placed under the auspices of Finance and Administration in 1957. *W. Va. Code*, 5A–4–5 [1961].[1] Like many state programs, the Legislature never specifically delegated to Finance and Administration the duty to pay postage fees for various state agencies. Rather, money for the payment of postage was simply appropriated to Finance and Administration through the Budget. Since 1934, it has been the custom of Finance and Administration to request and receive annually a large line item in the State Budget for central mailing. Traditionally, none of the state agencies requested or received a line item in the Budget for mailing because Finance and Administration bore the cost for all state agency postal fees.

During the 1987 Session of the West Virginia Legislature, the Senate Committee on Government Operations acted on a recommendation of the Governor's Management Task Force and urged the Senate to appropriate adequate funds for postage expenses to each state agency to eliminate the lump sum appropriated to the Department of Finance and Administration. In response to this cost-cutting theory of individual agency responsibility, two different bills were introduced regarding postal service, Senate Bill 100 and House Bill 2100.[2] Both bills gave Finance and Administration seed capital to create a revolving fund for postage fees. Both bills required each agency to reimburse Finance and Administration for postal fees: "Each spending unit shall be charged monthly for all meter service and shall refund to the revolving fund such amounts." House Bill 2100 at 15, Senate Bill 100 at 21.

Although the above language is identical in both the House and Senate bills, the two bills differed as to where the language should appear. The Senate bill required amending the language in the statute pertaining to Finance and Administration, *W. Va. Code*, 5A–4–5 [1961]. The House bill, however, merely placed the enabling language in the fiscal 1988 budget digest.

Because the House and Senate were deadlocked in their attempt to pass a budget bill, a conference committee consisting of five members of each House was formed to arbitrate a compromise. The conference committee's result is Enrolled Committee Substitute for House Bill 2100. This bill was adopted as the fiscal 1988 Budget Bill and was passed by both Houses on May 14, 1987. *See Acts and Resolutions of the W. Va. Legislature*, Ch. 29, Title 2 [1987]. The fiscal 1988 Budget Bill chose House Bill 2100's method regarding postal service charges and inserted the language in the fiscal 1988 budget digest under the Finance and Administration "unclassified line item," [3] rather than altering *W. Va. Code*, 5A–4–5 [1961].

1. *W. Va. Code*, 5A–4–2 [1961] provides:
   "The central mailing office heretofore created in the capitol, hereinafter called 'the mailing office,' is hereby placed under the control of the director."
   *W. Va. Code*, 5A–4–5 [1961] provides in full as follows:
   "All state departments, boards, bureaus, and commissions having their offices in the capitol, except the legislative department, shall dispatch all mail through the mail office: Provided, however, that mail prepared after gathering time and mail for special handling, within the limits of postage available to the department, may be posted through federal post-office channels."

2. Traditionally, the Legislature rotates responsibility for introducing the budget bill between the two houses. The Budget Bill for fiscal year 1988 was introduced in the House as House Bill No. 2100 and the Senate introduced its amendments under Senate Bill No. 100.

3. Published in accordance with *W. Va. Code*, 4–1–18 [1969], the fiscal 1988 Digest of the Enrolled Budget Bill provides a subhead entitled "Legislative Intent" for each of the accounts of petitioners and respondents specifying postage. The fiscal 1988 Digest of Enrolled Budget Bill for Account #2100 (Finance and Administration) states:

   LEGISLATIVE INTENT
   From the unclassified line item above, it is the intent of the legislature that $375,000 and any reappropriated balance be transferred to a special account to establish a revolving fund

Significantly, the fiscal 1988 Budget Bill made no specific appropriation for postage to the Department of Finance and Administration. In addition, the total general revenue appropriation for the Department of Finance and Administration was reduced by more than 39 percent or $2.8 million dollars. Combining these events with the legislative intent language of the fiscal 1988 Digest of the Enrolled Budget Bill for appropriation to Finance and Administration, the Commissioner of the Department of Finance and Administration *presumed* that the legislature had shifted the burden of state postage to each individual agency. Based on this surmise, the Commissioner of the Department of Finance and Administration developed a new system for funding expenses of the central mailing office.

■ Under this new system, Finance and Administration was to provide the funds to be used for postage "start up money" for each agency. Invoices with an administrative fee of twenty percent were sent to user agencies by the central mailing office on 27 July 1987. After a review of the anticipated start-up and associated costs with the Office of the Auditor, the Auditor approved new invoices containing an administrative fee of fifteen percent which were then prepared and sent to user agencies on 7 August 1987. Each state agency was to be invoiced monthly and the fifteen percent administrative fee was added to pay for meter service and non-personnel costs. All user agencies have either paid or attempted to pay their invoices, with the exception of the three petitioners.[4]

Petitioners and respondents then argued back and forth concerning which department now has the duty to pay postage for state agencies in the capitol complex. On 1 July 1987, Dennis Stewart advised the Secretary of State that the mail for his office was being returned as he had not made arrangements for billing procedures. By letter dated 6 July 1987, the Secretary of State agreed to pay the invoices pending the outcome of this litigation, but failed to do so. On 9 July 1987, the Commissioner of Finance and Administration advised each of the petitioners that mail services would be discontinued for their offices effective 14 September 1987 if their invoices were not paid. Petitioners filed this petition for a writ of mandamus on 26 August 1987, seeking to compel the Department of Finance and Administration to post mail delivered to it by petitioners at the cost of the Department of Finance and Administration.

■ The sole issue in this case is whether the duty of paying postage effectively can be amended or altered through the Budget process. Petitioners assert that in order to require petitioners to pay their own postage costs, the Legislature must act affirmatively by statute or resolution rather than by using the legislative digest of the 1988 Budget Bill to alter custom and usage. We agree and award the writ.

## I

*W. Va. Code*, 5A-4-2 [1961] and *W. Va. Code*, 5A-4-5 [1961] place the mailing office under the auspices of Finance and Administration and set forth the duties of that office; both of these *Code* sections, however, are silent concerning which spending unit pays for the postage. Although the 1986 Budget Act for fiscal year 1987, and many of its predecessors, *provided funding for postage to the Department of Finance and Administration*, the Budget Act for fiscal year 1988 failed to do so.[5]

for postage meter service requirements for all spending units operating from the general revenue fund, from special revenue or receiving reimbursement for postage costs from the federal government. *Each spending unit shall be charged monthly for all meter service and shall refund to the revolving fund such amounts.* [Emphasis added]

**4.** This opinion should not be understood to disturb existing allocations of postage costs among agencies not party to the suit. The legislation under consideration in this case is sufficiently ambiguous that the governor may make such arrangements as he deems proper with regard to the postage costs of agencies under his direct control.

**5.** Our research of the line item requests for postage by Finance and Administration shows the following:

| | |
|---|---|
| Fiscal year 1985 | $1,800,000 |
| Fiscal year 1986 | $1,700,000 |
| Fiscal year 1987 | $1,800,000 |

*See* Enrolled Committee Substitute for House Bill 2100. The petitioners' budget appropriation also did not contain a line item for postage. Therefore, an examination of the language of the Budget Act for fiscal year 1988 does not clearly show whether funds were appropriated to the petitioners or respondents for metering service.

We find great significance in the fact that the Budget Conference Committee chose to adopt the method concerning postage fees of House Bill 2100 over the method of Senate Bill 100. House Bill 2100 merely inserted the language that each agency shall be charged monthly for all meter service in the Budget Bill Legislative Digest. Senate Bill 100, on the other hand, sought to set up the revolving fund repayment to Finance and Administration by amending *W.Va. Code,* 5A-4-5 [1961] as opposed to mere language in the fiscal 1988 Legislative Digest.

■ In the case of an ambiguous statute, custom and usage may be resorted to as an aid to construe the statute. *Robertson v. Hatcher,* 148 W.Va. 239, 135 S.E.2d 675 (1964). *See, Brady v. Reiner,* 157 W.Va. 10, 198 S.E.2d 812 (1973). Since 1934, Finance and Administration has customarily paid the postage for all state agencies having their offices in the capitol complex. Petitioners, therefore, relied on Finance and Administration to pay their agencies' postage and *did not,* in fiscal 1988, request money for postage costs in their budgets. We believe that to hold that Finance and Administration no longer bears the postage burden would be unfair to these agencies. Had they had some warning that postage customs were to be altered, they *could have requested* line items for postage and brought the problem to the Legislature's attention.

■ When the intent of a statute is not clear on its face, the well-established canons of construction are called forth to interpret its meaning. The cardinal rule in construing a statute is to ascertain and give effect to the intent of the Legislature. This involves an examination of the conditions and circumstances prevailing at the time of the enactment. *Pond Creek Pocahontas Co. v. Alexander,* 137 W.Va. 864, 74 S.E.2d 590 (1953); *Horace Mann Ins. Co. v. Shaw,* 175 W.Va. 671, 337 S.E.2d 908 (1985); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983); *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975); *State ex rel. Bibb v. Chambers,* 138 W.Va. 701, 77 S.E.2d 297 (1953); *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953).

■ Unfortunately, our decision today cannot be grounded entirely on canons of construction or legal precedent. The problem is actually quite simple in practical terms: the state is short of cash, and in this instance an uncoordinated effort was made to save money by making agencies more accountable for their postage costs. Yet, the agencies that were to be made more accountable were entirely ignorant of what was about to happen to them, and because the change in custom and usage was not accomplished through the passage of a formal bill, which would have given everyone notice, it is unlikely that the agencies understood what was in store for them until it was too late. Had they known that they were to be expected to bear postage costs, they could have asked for an appropriate line item for that purpose. But once things start to get cut and pasted in the budget conference committee, what anyone intends to do to or for an agency is anyone's guess.

One thing, however, is clear: postal service is an integral part of the operation of state government and someone must pay for it. The record before us discloses that *no one* has been appropriated money to pay for postage—neither the agencies nor Finance and Administration. Therefore, someone must go back to the Legislature for either a supplemental appropriation or a specific legislative directive to use smoke

---

Fiscal year 1988 had no classified line item but merely the legislative intent language at the end of the Digest for Account #2100 (Finance and Administration) that establishes a revolving fund for postage meter services. *See* note 3 *supra* and accompanying language.

signals or tom toms. In this regard, it is easier for Finance and Administration to sort the problem out with the Legislature than for the separate agencies to do it.

## II

Respondent urges us to consider the language of the Legislative Digest as the true expression of legislative intent in construing the fiscal 1988 Budget Bill as it is the duty of the Legislature to prepare a digest or summary of the Budget Bill containing detailed information of the legislative intent in enacting each provision of the Budget Act. *W. Va. Code*, 4–1–18 [1969].[6] The Legislature uses this Digest as its detailed explanation concerning the manner in which appropriations are to be expended. The fiscal 1988 Budget Digest was prepared at the direction and approval of the members of the Conference Committee on the budget bill. Such use of this statutorily required digest has been recognized as an expression of legislative intent. *Jones v. Rockefeller*, 172 W.Va. 30, 303 S.E.2d 668 (1983). However, unlike the situation in *Rockefeller*, the language of the legislative digest at issue in the present case does not add clarity to the problem at hand. Rather it has been the source of all the confusion and conflict because all other factors in the case point to the continued tradition of having Finance and Administration pay for all state agencies' postage costs. Therefore, although the language of the Legislative Digest may serve to clarify the legislature's intent in some cases, we do not find the Legislative Digest enlightening in the present case. We find that a more affirmative act of the Legislature must take place to shift postage costs of state agencies than a mere footnote in the Legislative Digest.

6. *W. Va. Code*, 4–1–18 [1969] provides:
   The Legislature, acting by its appropriate committees, shall consider the budget bill, the budget document and matters relating thereto, and following such considerations and upon the passage of the budget bill by the Legislature, the Legislature shall prepare a digest or summary of the budget bill containing detailed information similar to that included in the budget document submitted to the Legislature by the governor but including

Accordingly, for the reasons set forth above the writ is awarded.

Writ Awarded.

amendments of legislative committees, and as finally enacted by the Legislature. Such digest or summary shall be prepared at the direction of and approved by members of the conferees committee on the budget and shall be included in the journals of the Legislature or printed as a separate document, and copies shall be furnished to the governor, commissioner of finance and administration and various state spending units for such as is deemed proper.