425 S.E.2d 111

**Joyce TRIGGS, Appellant**

v.

**BERKELEY COUNTY BOARD OF EDUCATION, Appellee of Election Below, Appellee.**

No. 20220.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided April 2, 1992.

As Modified May 15, 1992.

Concurring and Dissenting Opinion of Chief Justice McHugh Dec. 17, 1992.

Lawrence M. Schultz, Askin, Pill, Scales & Burke, L.C., Martinsburg, for appellant.

Richard L. Douglas, Claudia W. Bentley, Bowles Rice McDavid Graff & Love, Martinsburg, for appellee.

NEELY, Justice:

Joyce Triggs, alleging that she was improperly denied employment as a full-time elementary school teacher, appeals the order of the Circuit Court of Berkeley County that refused to award her a full-time position. Because Ms. Triggs did not show that she was the best qualified candidate for a position as a full-time teacher, we affirm the circuit court.

Ms. Triggs was a full-time teacher with the Berkeley County Board of Education from 1960 to 1971, when she resigned. Ms. Triggs, who holds a West Virginia professional certificate with a specialization in elementary education for grades one through eight, was recommended for tenure in a 1963 favorable evaluation and was a tenured teacher from 1963 through 1971. In 1979 and every year thereafter, Ms. Triggs contracted with the Board to be a substitute teacher.

In 1987 Ms. Triggs sought to regain a full-time teaching position and, between 1987 and 1989, Ms. Triggs applied for roughly twenty-nine posted vacancies. Ms. Triggs maintains that she should have been hired because her qualifications in at least three cases were superior to the qualifications of the successful applicant.[1] Ms. Triggs alleges that even though more than 100 positions became available between

1. About 24 of the positions for which Mrs. Triggs applied were filled by transferring the full-time teacher with the most seniority.

1987 and 1989, she was never interviewed. The three vacancies that Ms. Triggs alleges were filled by applicants with less teaching experience include: a first grade position at Tuscarora School that was awarded to an applicant with no teaching experience in Berkeley County; a second grade position at Berkeley Heights School that was awarded to an applicant with only one year of experience as a substitute teacher; and, another first grade position at Tuscarora School that was awarded to an applicant with no teaching experience.

Alan Canonico, the Board's Assistant Superintendent for Personnel, testified that his office prepared a list of the applicants with the appropriate certification for each vacancy. The list, which was given to the principal of the school where the vacancy existed, indicated the applicant's status as a regular employee, a substitute teacher, or a prospective employee. The selection from the list was made by the principal, after which the superintendent and the board usually approved the principal's recommendation. Mr. Canonico did not know why Ms. Triggs was not interviewed for the three vacancies for which she had more experience than the successful applicants, nor could he explain how the principals reached their hiring decisions.[2] Mr. Canonico did note that the successful applicants had taught, either as student or substitute teachers, in the school where they were hired.

Ms. Triggs filed a grievance and a level two hearing was conducted by Craig Manford, the superintendent's designee. Mr. Manford found that Ms. Triggs was entitled to a full-time position and recommended that she be offered employment at the next possible opportunity. Both the Board and Ms. Triggs appealed the decision; however, Ms. Triggs' appeal was limited to the issue of back pay. The Board waived the matter to level four. After the level four hearing examiner of the West

Virginia Education and State Employees Grievance Board found Ms. Triggs was not entitled to full-time employment, Ms. Triggs appealed to the Circuit Court, which upheld the level four decision. Ms. Triggs now appeals here alleging that the Board cannot appeal an unfavorable decision made by a superintendent's designee and that she was improperly denied a full-time position and back pay.

I.

First, Ms. Triggs argues that the Board of Education cannot appeal the level two decision granting her employment made by the superintendent's designee under *W.Va. Code*, 18–29–4 [1985], the statute establishing the grievance levels and procedures.

■ The grievance procedures set out in *W.Va.Code*, 18–29–1 *et seq.* [1989], "are to be given a flexible interpretation in order to carry out the legislative intent." *Spahr v. Preston County Bd. of Educ.*, 182 W.Va. 726, 391 S.E.2d 739, 743 (1990). *See Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245, 249 (1990) (discussing procedural issues under the W.Va. Human Rights Act); *Duruttya v. Bd. of Educ. of County of Mingo*, 181 W.Va. 203, 382 S.E.2d 40 (1989). In Syllabus Point 3, *Spahr supra*, we said:

The legislative intent expressed in W.Va.Code, 18–29–1 (1985), is to provide a simple, expeditious and fair process for resolving problems.

The first hearing[3] in this matter was conducted by a designee of the superintendent under *W.Va.Code*, 18–29–4(b) [1985], which states:

Within five days of receiving the decision of the immediate supervisor, *the grievant* may appeal the decision to the chief administrator, and *such administrator or his or her designee shall conduct a hearing in* accordance with section six [§ 18–29–6] of this article within

---

**2.** Mr. Canonico noted that preference in filling all vacancies was given to full-time teachers according to seniority.

**3.** The filing of a level one grievance requires a "conference with the immediate supervisor to

discuss the nature of the grievance and the action, redress or other remedy sought." *W.Va. Code*, 18–29–4(a)(1) [1985]. Ms. Triggs' level one grievance was not answered.

five days of receiving the appeal and shall issue a written decision within five days of such hearing. Such decision may affirm, modify or reverse the decision appealed from. [Emphasis added.]

An appeal of the level two decision by the grievant is allowed under *W.Va.Code*, 18–29–4(c) [1985], which states in pertinent part:

Except as to faculty and classified employees of the board of regents or any state institution of higher education who shall have the option to proceed directly to level four, within five days of receiving the decision of the chief administrator, *the grievant may appeal the decision to the governing board of the institution.*[4] [Emphasis added.]

Ms. Triggs argues that because *W.Va. Code*, 18–29–4(c) [1985] specifically allows the grievant to appeal, but does *not* allow the Board or its superintendent to appeal, *no* appeal by the Board or its superintendent is allowed. Although *W.Va.Code*, 18–29–4 [1985] does not state that the Board may appeal an adverse decision, the first three decisions on the grievance ladder (except for decisions made by a superintendent's designee) are made by the immediate supervisor, the superintendent or the Board, making an appeal by the Board unnecessary.

■ In any event, the Board maintains that its appeal is allowed under *W.Va. Code*, 18–29–3(t) [1985], which states:

Any chief administrator or governing board of an institution in which a grievance was filed may appeal such decision on the grounds that the decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial ev-

idence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion. Such appeal shall follow the procedure regarding appeal provided the grievant in section four [§ 18–29–4] of this article and provided both parties in section seven [§ 18–29–7] of this article.

Based on *W.Va.Code*, 18–29–3(t) [1985] we find that a county board of education or its superintendent may appeal a grievance decision made by the superintendent's designee at level two or by an independent hearing examiner at level four.

An appeal by the superintendent of *his own* designee's decision would appear to show either that the superintendent unwisely chose the designee or that the superintendent reached a decision without benefit of a hearing and is unwilling to change his mind. Yet, if we deny the superintendent the right to appeal a level two decision, the level two hearing will become a *pro forma* waste of time because the system will encourage the superintendent to instruct his designee to decide issues for the administration and against the grievant. Therefore, in an imperfect world where an optimum mix of incentives is impossible to achieve, we find the best course is to allow the superintendent to appeal a level two decision made by a designee.

## II.

■ Ms. Triggs maintains that she has seniority in matters of employment because her reemployment as a substitute teacher resurrected her seniority of eleven years based on her previous teaching in the county. Because of this resurrected seniority, Ms. Triggs alleges that under *W.Va.Code*, 18A–4–8(b) [1983], she, as the applicant with the most seniority, was entitled to a written statement of the reasons she was not selected.[5]

---

4. *W.Va.Code*, 18–29–4(d)(1) [1985] also provides that "[i]f the *grievant* is not satisfied with the action taken by the governing board, within five days of the written decision the grievant may request, in writing, on a form furnished by the employer, that the grievance be submitted to a

hearing examiner as provided for in section five [§ 18–29–5] of this article...." [Emphasis added.]

5. *W.Va.Code*, 18A–4–8(b) [1983], provides in pertinent part:

Professional employees of a board of education are entitled to seniority under *W.Va.Code*, 18A–4–8b(a) [1983], which provides, in pertinent part:

> The seniority of professional personnel shall be determined on the basis of the *length of time* the employee *has been professionally employed* by the county board of education. [Emphasis added.] [6]

This brief description of seniority for professional employees provides neither a comprehensive definition of seniority nor any ancillary rules that would indicate how the seniority system is to work in practice. In the present case, *W.Va.Code*, 18A–4–8b(a) [1983] does not provide clear and unambiguous instruction on what happens to the seniority of a person who voluntarily resigns or retires and is subsequently reemployed by the same board of education. The statute also does not define when a person "has been professionally employed." However, based on the other code provisions dealing with professional employment and the commonly accepted meaning of the term "seniority," it is clear that the legislature did not intend, upon reemployment, to resurrect the seniority of a person who had *voluntarily* resigned or retired.

### A.

Our holding that seniority is not resurrected upon reemployment with the same board of education is based on the other code sections dealing with professional employment and on the customary and usual meaning of the term "seniority."

The two statutory provisions dealing with professional employment that help clarify what employee rights are affected when a person voluntarily resigns or retires are *W.Va.Code*, 18A–2–2a [1988], providing for leaves of absence and *W.Va.Code*, 18A–2–2 [1990], providing for teacher contracts.

In addition to the leave policy found in *W.Va.Code*, 18A–4–10 [1991] (the Code section allowing sick days and "personal days"), an employee of the board, with the board's approval, may have a leave of absence without pay for a period of one year or less. During the leave of absence, the "teacher shall retain all seniority, rights and privileges which had accrued at the time of the approved leave of absence, and shall have all rights and privileges generally accorded teachers at the time of reemployment." *W.Va.Code*, 18A–2–2a(a) [1988]. Obviously, this Code section assumes that a teacher leaving for a year would lose seniority were it not for the benefit of this section.

*W.Va.Code*, 18A–2–2 [1990] also provides guidance on what rights are retained by a teacher who returns to employment after a resignation. *W.Va.Code*, 18A–2–2 [1990] specifically deals with a teacher's right to a continuing contract after a probationary period and provides that "[t]he continuing contract of any teacher shall remain in full force and effect except as modified by mutual consent of the school board and the teacher, unless and until terminated...." [7]

---

> If the applicant with the most seniority is not selected for the position a written statement of reasons shall be given to the applicant with the most seniority with suggestions for improving the applicant's qualifications.

**6.** The current code section dealing with seniority for professional employees is *W.Va.Code*, 18A–4–7a [1990], which, in pertinent part, provides the same method for determining seniority. *W.Va.Code*, 18A–4–7a [1990], provides:

> The seniority of classroom teachers as defined in section one, article one of this chapter with the exception of guidance counselors shall be determined on the basis of the *length of time* the employee *has been employed* as a regular full-time certified and/or licensed professional educator by the county board of education and shall be granted in all areas

that the employee is certified and/or licensed. [Emphasis added.]

**7.** *W.Va.Code*, 18A–2–2 [1990], provides in pertinent part:

> A teacher's contract, under this section, shall be for a term of not less than one nor more than three years, one of which shall be for completion of a beginning teacher internship pursuant to the provisions of section two-b [§ 18A–3–2b], article three of this chapter, if applicable; and if, after three years of such employment, the teacher who holds a professional certificate, based on at least a bachelor's degree, has met the qualifications for the same, and the board of education enter into a new contract of employment, it shall be a continuing contract: ... Provided, however, That a teacher holding continuing contract

Except for the situations outlined in *W.Va. Code*, 18A–2–2 [1990] [8], the termination of a teacher's employment ends the continuing contract and upon reemployment the teacher must again serve a successful probationary period before being granted a continuing contract.

The legislature's determination not to grant a reemployed teacher a continuing contract indicates that the legislature considers termination of a teacher's contract to end the employer-employee relationship, except in specific limited circumstances generally dealing with dismissals based on lack of need (*i.e.*, lay-offs). Therefore, based on our reading of all related statutes together, we find that the legislature did not intend seniority rights to be retained by a teacher who voluntarily resigns or retires.

### B.

■ Until 11 August 1987, the state superintendent of schools interpreted the applicable code provisions to extinguish seniority for teachers who voluntarily resign or retire and he directed that reemployed teachers begin with zero seniority. However in 1987, the state superintendent changed his opinion and held that "[s]eniority no longer will be deemed extinguished, but only suspended during the hiatus in employment...." The superintendent did not change his opinion based on any statutory modification, but because he wanted to preserve uniformity of interpretation and application of school law. The challenge to uniformity occurred when two circuit courts interpreted *W.Va.Code*, 18A–4–8b(a) [1983] to afford a reemployed teacher seniority without regard for any breaks in the employment relationship.[9] Because the circuit court decisions were binding on the involved boards of education, the superintendent changed his interpretation to allow seniority to be resurrected on reemployment by the same board. Although the superintendent's interpretation of school law is entitled to great weight unless clearly erroneous (Syllabus Point 3, *Smith v. Bd. of Ed. of Logan County*, 176 W.Va. 65, 341 S.E.2d 685 (1985)), given the superintendent's reason for revising his interpretation, we find that greater weight should be

---

status with one county shall be granted continuing contract status with any other county upon completion of one year of acceptable employment if such employment is during the next succeeding school year or immediately following an approved leave of absence extending no more than one year.

The continuing contract of any teacher shall remain in full force and effect except as modified by mutual consent of the school board and the teacher, unless and until terminated ... Provided further, That a continuing contract shall not operate to prevent a teacher's dismissal based upon the lack of need for the teacher's services pursuant to the provisions of law relating to the allocation to teachers and pupil-teacher ratios. But in case of such dismissal, the teachers so dismissed shall be placed upon a preferred list in the order of their length of service with that board, and no teacher shall be employed by the board until each qualified teacher upon the preferred list, in order, shall have been offered the opportunity for reemployment in a position for which they are qualified: And provided further, That he has not accepted a teaching position elsewhere. Such reemployment shall be upon a teacher's preexisting continuing contract and shall have the same effect as though the contract had been suspended during the time the teacher was not employed.

**8.** *W.Va.Code*, 18A–2–2 [1990] provides the following exceptions: (1) if a teacher's dismissal is for lack of need, the teacher's "reemployment shall be upon a teacher's preexisting continuing contract and shall have the same effect as though the contract had been suspended during the time the teacher was not employed;" and (2) a teacher with a continuing contract in one county is to be granted continuing contract status in another county "upon completion of one year of acceptable employment if such employment is during the next succeeding school year or immediately following an approved leave of absence extending no more than one year."

**9.** The two circuit court cases allowing reemployment to resurrect previously acquired seniority are: *Gilkerson v. Nolan*, No. 85–P–116 (Wayne County, Jan. 15, 1986), *appeal denied* (April 1, 1986) and *Hark v. Trumble*, No. 86–C–Ap–306 (Kanawha County, March 5, 1987). We note that our denial of appeal in *Gilkerson*, which cited no ground for rejection, is similar to the denial of certiorari by the U.S. Supreme Court in that the denial of appeal is not an adjudication on the merits and does not carry any implication of approval of the judgment sought to be reviewed. Rule 7 of the West Virginia Rules of Appellate Procedure; Syllabus, *Smith v. Hedrick*, 181 W.Va. 394, 382 S.E.2d 588 (1989).

accorded to his pre–1987 interpretation finding seniority extinguished on voluntary termination.

## C.

Our conclusions concerning the effect of voluntary termination of employment on the employee's seniority rights are significantly bolstered by custom and usage. *Hechler v. McCuskey*, 179 W.Va. 129, 132, 365 S.E.2d 793, 796 (1987) (using custom and usage to decide if the Budget process altered the duty to pay postage). Although West Virginia's teacher seniority system was created by statute, most seniority systems result from collective bargaining negotiations and are part of labor-management agreements; therefore, we may look to general labor law to find the custom and usage that surrounds seniority.

One of the commonly accepted notions about seniority is that it is "a status attained by length of continuous service ... to which are attached by custom or prior collective agreement various rights or privileges ... on the basis of ranking relative to others." Webster's Third New International Dictionary 2066 (unabridged ed. 1970). *See California Brewers Ass'n v. Bryant*, 444 U.S. 598, 605, n. 12, 100 S.Ct. 814, 819, n. 12, 63 L.Ed.2d 55 (1980) (quoting the same definition of seniority); *but see Brewers*, 444 U.S. at 612–13 n. 3, 100 S.Ct. at 823 n. 3 (Marshall, J. dissenting). Usually the collective bargaining agreement provides that a reemployed person is considered a new employee after returning from a voluntary cessation of employment and the agreement usually specifies any exceptions to the forfeiture of accumulated seniority rights. *Brewers*, 444 U.S. at 607 ns. 17–20, 100 S.Ct. at 820 ns. 17–20 (giving examples of what a collective bargaining agreement can specify about seniority). According to 13 Warren G. Lamont et al., *Employment Coordinator*, ¶ LR–40,290 (1992), "[s]eniority may be determined by

the length of continuous employment in a plant, department, or smaller unit, or from placement on a list established on a specific date." *See also*, 48A Am.Jur.2d *Labor and Labor Relations*, §§ 1802–05 (1979) (discussing various seniority provisions).

█ In the present case, because *W.Va. Code*, 18A–4–8b(a) [1983] does not specify the meaning of "length of" employment, we find that given normal custom and usage, the legislature's intent was to require continuous employment for the calculation of seniority. Our conclusion that seniority is based on continuous employment unless the employee falls into one of the statutory exceptions is consistent with the other code provisions dealing with professional employment. Therefore, we find that Ms. Triggs' resignation extinguished the seniority she had acquired during her previous employment by the Berkeley County Board of Education. It is further noted that this opinion shall have no retroactive application and those school employees who were awarded seniority after a break in service prior to our decision in this case shall retain such seniority. However, in the future, seniority shall be determined in conformity with our holding today.[10]

## III.

We also find that Ms. Triggs did not acquire any seniority based on her substitute teaching between 1979 and 1987 because the professional employment described in *W.Va.Code*, 18A–4–8b(a) [1983] as beginning the accrual of seniority, means full or substantially full time employment. A substitute teaching contract is not analogous to a full-time teaching contract. Most substitute teachers are assigned and employed on a temporary basis. *See W.Va.Code*, 18A–2–3 [1969].

█ The benefits, including salary, that a teacher receives are partially based on the type of contract, either full time or

---

10. After the initial opinion in this case was filed on 2 April 1992, an application for rehearing was filed by appellant supported by an *amicus curiae* brief that pointed out that our ruling unjustly surprised hard working teachers who relied to their detriment in good faith on the superintendent's prior ruling about seniority. Upon full consideration of the balance of equities the Court concluded that seniority awarded pursuant to the superintendent's ruling in 1987 should continue in full force and effect.

substitute. *W.Va.Code,* 18A–4–7 [1981] prescribes the pay for substitute teachers and uses the term "experience" rather than the term "seniority" to describe a substitute teacher's years of employment. *W.Va.Code,* 18A–4–2 [1990] prescribes the state minimum salaries for full-time teachers and *W.Va.Code,* 18A–4–8b [1988] enumerates various "employee" rights, including *seniority,* termination, promotion and transfer. Because the employee's right to seniority is based on full-time employment, seniority does not arise pursuant to casual, substitute or temporary employment.[11]

Seniority rights are predicated on full-time employment because the preference given by seniority is primarily important during reductions in force for lack of need and during subsequent recalls. In *Dillon v. Bd. of Educ. of County of Wyoming,* 177 W.Va. 145, 351 S.E.2d 58 (1986), we noted that the legislature by adopting *W.Va.Code,* 18A–4–8b(a) [1983], requiring a written statement be given to the unsuccessful candidate with the most seniority, "must have intended seniority to play some role in the selection process. [Footnote omitted]." *Dillon id.* at 148, 351 S.E.2d at 61.

■ The 1990 amendments to *W.Va. Code,* 18A–4–7a made clear that seniority for professional employees of a county board of education is based on "regular, full-time" professional employment and not employment as a substitute. *W.Va.Code,* 18A–4–7a [1990], states:

> Employment for a full employment term shall equal one year of seniority, but no employee may accrue more than one year of seniority during any given fiscal year. Employment for less than the full employment term shall be prorated. A random selection system established by the employees and approved by the board shall be used to determine the

priority if two or more employees accumulate identical seniority.

■ According to *W.Va.Code,* 18A–4–7a [1990], the only seniority that a substitute teacher can earn is "exclusively for the purpose of applying for employment" and this limited employment preference accrues "[u]pon completion of one hundred thirty-three days of employment in any one school year." [12] When a teacher resigns from a school system, that teacher loses seniority. That teacher, even if reemployed as a substitute teacher, does not regain even a limited employment preference until the reemployed substitute teacher has been employed in a professional capacity for 133 days or more in any one school year. *See Harkins v. Ohio County Bd. of Educ.,* 179 W.Va. 373, 369 S.E.2d 224, 226 (1988) (recognizing that employment of a substitute teacher for at least 133 days in the three previous school years "entitled her to a continuing contract").

In the present case, during her eight years as a substitute, Ms. Triggs never began to work as a "regular, full-time" teacher and never was employed for 133 days in any one school year. Therefore, during her employment as a substitute teacher, Ms. Triggs never accrued regular seniority based on full-time employment and never accrued "seniority exclusively for the purpose of applying for employment" based on serving as a substitute teacher for 133 days in one school year. We find that when Ms. Triggs sought a full-time position she had no seniority because her voluntary resignation extinguished the seniority she had accrued before 1971 and her employment as a substitute teacher was insufficient to accrue even a limited employment preference. Because Ms. Triggs was not the applicant with the most seniority, she was not entitled to a

---

11. *W.Va.Code,* 18A–4–7a [1990], is the current code section enumerating professional employee rights.

12. *W.Va.Code,* 18A–4–7a [1990], provides in pertinent part:
    Upon completion of one hundred thirty-three days of employment in any one school year, substitute teachers shall accrue seniority exclusively for the purpose of applying for employment as a permanent, full-time professional employee. One hundred thirty-three days or more of said employment shall be prorated and shall vest as a fraction of the school year worked by the permanent, full-time teacher.

written statement of the reasons she was not selected.

## IV.

▮▮▮▮ Ms. Triggs contends that because she was the best qualified applicant for at least three positions, she was improperly denied a full-time position under *W.Va.Code,* 18A–4–8b(a) [1988], which provided in pertinent part:

A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications.[13]

In Syllabus Point 1, *Dillon v. Bd. of Educ. of County of Wyoming, supra,* we said:

Under W.Va.Code, 18A–4–8b(a) (1983), decisions of a county board of education affecting teacher promotions and the filling of vacant teaching positions must be based primarily upon the applicants' qualifications for the job, with seniority having a bearing on the selection process when the applicants have otherwise

equivalent qualifications or where the differences in qualification criteria are insufficient to form the basis for an informed and rational decision.

In the present case, Ms. Triggs, a teacher with eleven years experience as a full-time teacher, was passed over in favor of applicants with little or no full-time experience. The Board of Education's explanation of why applicants with less experience were selected, although vague, indicated that the successful applicants had taught in the schools where the vacancies existed either as student teachers or substitute teachers. Ms. Triggs did not produce evidence demonstrating that she was decidedly superior to any particular successful candidate. Seniority, of course, is only a tie breaker among equally qualified applicants. Ms. Triggs had superior apparent credentials only because of experience, which may or may not translate into her being deemed the best qualified applicant. *See supra* sections II and III. Although the selection process used by the principals where the vacancies existed was unknown

---

**13.** In 1990, the relevant provisions of this section were moved to *W.Va.Code,* 18A–4–7a [1990]. The new statute requires that the applicant with the highest qualifications be selected and provides guidance for judging qualifications. *W.Va.Code,* 18A–4–7a [1990], states in pertinent part:

A county board of education shall make decisions affecting the hiring of new classroom teachers or professional personnel other than classroom teachers on the basis of the applicant with the highest qualifications. In judging qualifications, consideration shall be given to each of the following: Appropriate certification and/or licensure; amount of experience relevant to the position or, in the case of a classroom teaching position, the amount of teaching experience in the subject area and/or grade level; the amount of course work and/or degree level in the relevant field and degree level generally; academic achievement; relevant specialized training; past performance evaluations conducted pursuant to section twelve [§ 18A–2–12], article two of this chapter; and other measures or indicators upon which the relative qualifications of the applicant may fairly be judged. If one or more permanently employed instructional personnel apply for a classroom teaching position and meet the standards set forth in the job posting, the county board of education shall make decisions affecting the filling of such positions on

the basis of the following: Appropriate certification and/or licensure; amount of experience relevant to the position; the existence of teaching experience in the subject area; degree level in the relevant field; specialized training directly related to the performance of the job; meeting satisfactory standards in evaluations over the previous two years; and seniority. If the applicant with the most seniority is not selected for the position, upon the request of the applicant a written statement of reasons shall be given to the applicant with suggestions for improving the applicant's qualifications.

When reading this statute, it is obvious that the legislature intended appointments in our school systems to be based *primarily* on qualifications, with such things as seniority and paper credentials serving only as tie breakers. Thus, a teacher with an undergraduate mathematics degree and a demonstrated mastery of calculus, probability theory, statistics, and number theory is more "qualified" than a person holding a master's degree in mathematics education if the master's degree holder's highest mathematical achievement is competence in college algebra. Of course, it does the great mathematician with the undergraduate degree no good if he or she can't teach, but these are the factors that must be weighed in an intelligent way and then articulated to successful and unsuccessful applicants alike. "Qualifications" means "qualifications"; "qualifications" does not mean "politics."

to the assistant superintendent for personnel, the record indicates that the principals hired those applicants who, either as student teachers or substitute teachers, had taught in the school where the vacancies existed and, therefore, the principals were not buying a pig in a poke.

In Syllabus Point 3 of *Dillon, supra,* we said:

> County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.

Recently in Syllabus Point 4, *Bd. of Educ. of the County of Wood v. Enoch,* 186 W.Va. 712, 414 S.E.2d 630 (1992), we said:

> A board of education making a hiring decision under *W.Va.Code,* 18A–4–8b(a) [1988], should use its best professional judgment to select the applicant best suited to the needs of the students based on qualifications and evaluations of the applicants' past service. Only when all other factors are equal should a board of education look to seniority.

In *Johnson v. Cassell,* 182 W.Va. 317, 387 S.E.2d 553 (1989), this Court recognized that the various laws and policies relating to the hiring of teachers require that the best qualified teacher be hired. *In accord Egan v. Bd. of Educ. of Taylor County,* 185 W.Va. 302, 406 S.E.2d 733 (1991); *State ex rel. Oser v. Haskins,* 179 W.Va. 789, 374 S.E.2d 184 (1988).

In *Tenney v. Bd. of Educ. of the County of Barbour,* 183 W.Va. 632, 398 S.E.2d 114, 116 (1990), we noted that "selection of candidates for educational positions is not a mechanical or mathematical process." *See also, supra,* note 12. In *Tenney,* we found insufficient evidence to show that Mr. Tenney was the best qualified applicant, although the record contained the qualifications of all applicants and outlined the selection process.

We find that teachers who have voluntarily withdrawn from school employment to raise families or for other reasons have valuable experience that must be taken into consideration when such former teachers reapply for full-time positions in the school system. Under *W.Va.Code,* 18A–4–7a [1990] (formerly *W.Va.Code,* 18A–4–8b [1983]), hiring must always be done on the basis of qualifications, and it is therefore inappropriate to hire new and inexperienced teachers over older, more experienced teachers *simply because* young personnel are *cheaper* for the board to hire. However, this general proposition should not discourage a board from hiring young teachers when they are the best qualified applicants. *See supra,* note 12.

In the present case, Ms. Triggs did not show that she was *the best qualified applicant for a particular position* or that the Board willfully discriminated against her. Ms. Triggs presented evidence only of the experience of the candidates. Although teaching experience is a factor to consider in reviewing an applicant's qualifications, the amount of experience is but one of many factors that a board should consider in selecting a candidate for a full-time teaching position.[14] We find that because Ms. Triggs failed to show that she was the best qualified applicant, she is not entitled to be appointed to any of the positions to which she applied.

For the above stated reasons, the judgment of the Circuit Court of Berkeley County is affirmed.

Affirmed.

McHUGH, Chief Justice, concurring, in part, and dissenting, in part:

(Filed Dec. 17, 1992)

I dissent, in part, from the majority opinion because I believe that the seniority of a professional employee of a board of education, who has voluntarily resigned or retired, is resurrected upon reemployment

---

**14.** One of several indicators of qualifications specifically listed by the legislature in *W.Va. Code,* 18A–4–7a [1990] was "the amount of teaching experience in the subject area and/or grade level...."

with the same board of education under *W.Va.Code*, 18A–4–8b(a) [1983].[1] However, I concur with the majority's ultimate judgment that this case be affirmed.

In syllabus point 3, the majority opinion states:

> *W.Va.Code*, 18A–4–8b(a) [1983] does not provide clear and unambiguous instruction concerning what happens to the seniority of a person who voluntarily resigns or retires from a public school system and is subsequently reemployed by the same board of education. However, based on the other code provisions dealing with professional employment and the commonly accepted meaning of the term 'seniority,' the court concludes that the legislature did not intend, upon reemployment, to resurrect the seniority of a person who had *voluntarily* resigned or retired. Thus, when a teacher resigns from a school system, that teacher loses seniority. That teacher, even if reemployed as a substitute teacher, does not regain even a limited employment preference until the reemployed substitute teacher has been employed in a professional capacity for 133 days or more in any one school year. *W.Va.Code*, 18A–4–7a [1990].

(emphasis in original).

The majority's holding is based on its conclusion that the definition of seniority contained in *W.Va.Code*, 18A–4–8b(a) [1983] is ambiguous. However, *W.Va. Code*, 18A–4–8b(a) [1983] clearly states, in pertinent part: "The seniority of professional personnel shall be determined on the basis of the *length of time* the employee *has been professionally employed* by the county board of education." (emphasis added). The majority's opinion in effect inserts the word "continuous" into the statute. Clearly, the legislature did not insert the word continuous before the phrase "length of time," which it could have easily done. Therefore, the legislature did not intend for seniority to be determined on the basis of a continuous length of time of employment. In syllabus point 2 of *State*

*v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968), we stated: "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." The majority should have accepted the plain meaning of *W.Va.Code*, 18A–4–8b [1983] without resorting to the rules of interpretation since the statute is clear and unambiguous.

The state superintendent also found the statute to be clear and unambiguous in 1987 when he ruled that "[s]eniority no longer will be deemed extinguished, but only suspended during the hiatus in employment." We have held that the state superintendent is charged by statute with authority to interpret laws regarding schools, and his interpretations are to be given great weight unless they are clearly erroneous. *Smith v. Bd. of Educ. of the County of Logan*, 176 W.Va. 65, 341 S.E.2d 685 (1985). The majority has failed to show that the superintendent's opinion is clearly erroneous.

Furthermore, the majority was grasping at straws in its interpretation of *W.Va. Code*, 18A–4–8b [1983]. The majority attempts to find the legislature's intent by analyzing *W.Va.Code*, 18A–2–2 [1990], which provides for teacher contracts and *W.Va.Code*, 18A–2–2a [1988], which provides for leaves of absence.

Specifically, the majority finds that *W.Va.Code*, 18A–2–2 [1990] states that if a teacher's employment ends, the continuing contract ends, and when the teacher is reemployed, the teacher must again serve a probationary period before being granted a continuing contract even if the teacher is reemployed in the same county. There is no language in *W.Va.Code*, 18A–2–2 [1990] which directly states the majority's finding. In fact, *W.Va.Code*, 18A–2–2 [1990] states, in pertinent part:

> [A] teacher holding continuing contract status with one county shall be granted continuing contract status with any other county upon completion of one year of acceptable employment if such employ-

---

1. The current code section dealing with seniority for professional employees is *W.Va.Code*,

18A–4–7a [1992] as the majority points out in footnote 6.

ment is during the next succeeding school year or immediately following an approved leave of absence extending no more than one year.

This portion of *W.Va.Code*, 18A–2–2 [1990] shows that the legislature did intend to give teachers who have held a continuing contract greater rights.

However, even if the school system follows the majority's interpretation of *W.Va. Code*, 18A–2–2 [1990], the majority fails to show how a continuing contract is related to the definition of seniority. The legislature intended to give teachers credit for the length of time they served a county regardless of whether or not they have a continuing contract. To hold otherwise would penalize the women who chose to leave teaching for a few years to raise their young children. The majority's holding also penalizes those teachers who leave teaching for a few years in order to obtain more education, such as pursuing a master's or doctorate degree. Certainly, we want to encourage teachers to care for their families and to broaden their education.

Similarly, the majority's analysis of *W.Va.Code*, 18A–2–2a(a) [1988] fails to show how a leave of absence is related to the definition of seniority. The majority correctly points out that a teacher retains all seniority rights during an approved leave of absence. Furthermore, I agree with the majority's conclusion that unless a teacher has an approved leave of absence, seniority will be suspended if a teacher leaves teaching for one year. However, I disagree with the majority's conclusion that the teacher's seniority will not be resurrected once the teacher is rehired.

The majority states that its conclusions regarding the effect of a voluntary termination on seniority rights are bolstered by custom and usage. However, in footnote 18 of *California Brewers Ass'n v. Bryant*, 444 U.S. 598, 607, 100 S.Ct. 814, 820, 63 L.Ed.2d 55, 65 (1980), the Supreme Court noted that "a collective-bargaining agreement *could* provide that accumulated seniority rights are permanently forfeited by voluntary resignation[.]" (emphasis added). The footnote in *California Brewers*

*Ass'n*, a case cited by the majority, weakens rather than bolsters the majority's conclusion since it states that "continuous service" can be added to the collective bargaining agreement which implies that if it is not added, then the service need not be continuous.

Based upon the foregoing, I concur only with the majority's ultimate judgment that Ms. Triggs is not entitled to be appointed to any of the positions to which she applied since she failed to show that she was the best qualified applicant.

I am authorized to state that Justice WORKMAN joins me in this separate opinion.