488 S.E.2d 480

**Sandra Ranae HAZELWOOD, Plaintiff Below, Appellant,**

v.

**MERCER COUNTY BOARD OF EDUCATION, Defendant Below, Appellee.**

**No. 23864.**

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1997.

Decided June 11, 1997.

John Everett Roush, West Virginia School Service Personnel Association, Charleston, for Appellant.

Kathryn Reed Bayless, Bayless & McFadden, Princeton, for Appellee.

PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Kanawha County, West Virginia, entered on May 7, 1996. In this case, the appellant, Sandra Ranae Hazelwood, a teacher's aide currently employed by the appellee, the Mercer County Board of Education, seeks seniority credit for a period of previous employment with the appellee. Specifically, the appellant was hired as a teacher's aide in 1987 by the appellee but had previously worked as a teacher's aide for the appellee from October 1979 until her voluntary resignation in December 1984. The seniority credit the appellant is seeking concerns the 1979–1984 period. As reflected in the final order, the circuit court affirmed a decision of the West Virginia Education and State Employees Grievance Board denying the appellant's claim.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that the final order should be affirmed.

I

The facts are largely undisputed. On October 1, 1979, the appellant was hired by the appellee as a teacher's aide, and she contin-

ued in that capacity until her voluntary resignation on December 13, 1984. Thereafter, on January 19, 1987, the appellant was rehired by the appellee as a teacher's aide. Counsel for the appellant states she is currently assigned to Pikeview High School. As determined by statute, the appellant is considered to be a "service," rather than a "professional," employee.[1]

During the appellant's second period of employment with the appellee, several teacher's aides were laid off as the result of reductions-in-force. Those reductions occurred with regard to school years 1991–92, 1992–93 and 1993–94, and the individuals laid-off had been employed by the appellee prior to the appellant's January 19, 1987 hiring date. The appellant was not affected by the reductions-in-force because, apparently, she was given seniority credit for her 1979–84 period of employment. According to the appellee, such credit resulted from a clerical error in the appellant's employment record. Otherwise, asserts the appellee, the appellant would have been laid-off as well.

Soon after, the appellant learned that certain teacher's aides with less seniority (as she contends) were transferred or assigned to more desirable positions within the appellee's school system. Consequently, in March 1994, the appellant inquired about the status of her seniority credit. An examination of a seniority list maintained by the appellee revealed to the appellant that she was not given seniority credit for the 1979–1984 period of employment. That fact was later confirmed by the appellee.

On March 30, 1994, the appellant instituted grievance proceedings pursuant to W. Va. Code, 18–29–1 [1992], et seq., and on June 27, 1994, a Level IV evidentiary hearing was conducted.[2] Rather than asserting that she should be instated into a particular position

---

1. Pursuant to W. Va.Code, 18A–1–1(e) [1981], the phrase *service personnel* is defined as "those who serve the school or schools as a whole, in a nonprofessional capacity, including such areas as secretarial, custodial, maintenance, transportation, school lunch, and as aides." *See also W. Va.Code,* 18A–4–8 [1993].

2. It should be noted that the appellee asserts that the appellant failed to initiate grievance proceedings within the time limits set forth in *W. Va.*

Code, 18–29–1 [1992], et seq. Specifically, W. Va.Code, 18–29–4(a)(1) [1992], states:

Before a grievance is filed and within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative shall schedule a conference with the immediate supervisor to discuss the nature of the grievance

within the school system, the appellant contended during the grievance proceedings that she was entitled to seniority credit for her 1979–84 period of employment. Following the Level IV hearing, however, the West Virginia Education and State Employees Grievance Board concluded that the appellant was not entitled to seniority credit for those years. As the opinion of the Grievance Board stated:

If [the appellant] had inquired earlier, she would have learned that the [appellee] had always adhered to a policy of not giving its service employees such credit. It is likely if not probable that she would also have discovered that her retention and the termination of more senior Aides during the three RIFs [reductions-in-force] discussed were the result of a clerical error.

Subsequently, the decision of the West Virginia Education and State Employees Grievance Board was affirmed by the circuit court. As the final order of May 7, 1996, states: "[T]his Court concludes that the decision of the Administrative Law Judge was not clearly wrong and that the questions of law were correctly decided." This appeal followed.

## II

In *Quinn v. West Virginia Northern Community College*, 197 W.Va. 313, 475

and the action, redress or other remedy sought.

Here, it is undisputed that the appellant initiated the grievance proceedings on March 30, 1994. According to the parties, however, the controversy concerns when, prior to March 30, it became known to the appellant that the appellee was not going to credit her for the 1979–84 period of employment. The appellee asserts that the grievance proceedings were untimely because the appellant knew by March 3 or 4, 1994, that her seniority date had been corrected and established as January 19, 1987. On the other hand, the appellant asserts that she did not know until much later in March 1994 that the January 19, 1987, date was being used.

Nevertheless, inasmuch as this Court agrees with the West Virginia Education and State Employees Grievance Board that the appellant's claim should be rejected upon the merits, we need not address the question of whether the appellant met the fifteen-day filing requirement of *W. Va.Code*, 18–29–4(a)(1) [1992]. In any event, the record is less than clear as to when the appellant learned of the appellee's actions in this regard.

S.E.2d 405 (1996), this Court confirmed the principle expressed in syllabus point 1 of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." *See also* syl. pt. 1, *Bolyard v. Kanawha County Board of Education*, 194 W.Va. 134, 459 S.E.2d 411 (1995); syl. pt. 1, *Ohio County Board of Education v. Hopkins*, 193 W.Va. 600, 457 S.E.2d 537 (1995); syl. pt. 3, *Lucion v. McDowell County Board of Education*, 191 W.Va. 399, 446 S.E.2d 487 (1994); syl. pt. 1, *Department of Natural Resources v. Myers*, 191 W.Va. 72, 443 S.E.2d 229 (1994); syl. pt. 1, *Department of Health v. Blankenship*, 189 W.Va. 342, 431 S.E.2d 681 (1993); *W. Va.Code*, 18–29–7 [1985].[3] That principle is, of course, consistent with our observation that rulings upon questions of law are reviewed *de novo*. *State v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994); *Adkins v. Gatson*, 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994); *State v. Stuart*, 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994); syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

3. As indicated above, the appellant instituted the grievance proceedings herein pursuant to *W. Va. Code*, 18–29–1 [1992], *et seq.*, and we thus cite *Scalia* for its reference to that statutory scheme. That statutory scheme concerns the "West Virginia Educational Employees Grievance Board."

As we observed in *Quinn*, however, the procedures of the "West Virginia Education and State Employees Grievance Board" are set forth in chapter 29, article 6A, of the *West Virginia Code*. As *W. Va.Code*, 29–6A–5 [1988] states: "The education employees grievance board, created by virtue of the provisions of section five, article twenty-nine, chapter eighteen of this code, shall be hereafter known and referred to as the education and state employees grievance board [.]" Thus, comparable to syllabus point 1 of *Scalia* is the syllabus point in *Quinn* which states: "A final order of the hearing examiner for the West Virginia Education and State Employees Grievance Board, made pursuant to *W. Va.Code*, 29–6A–1, *et seq.* [1988], and based upon findings of fact, should not be reversed unless clearly wrong."

■ In this action, the appellant contends that she is entitled to seniority credit for her 1979–84 period of employment with the appellee, especially since she was apparently given credit for that employment with regard to the reductions-in-force. The appellee, on the other hand, contends that the appellant is not entitled to seniority credit for the 1979–84 period. Emphasizing that it had a policy of not giving its service employees such credit, the appellee asserts that the appellant's avoidance of a lay-off during the reductions-in-force was simply the result of a clerical error, as the Grievance Board determined. According to the appellee, that error was corrected, and the appellant should receive no further benefit from it.

Manifestly, seniority rights are of great importance to school employees. With regard to service employees, in particular, W. Va. Code, 18A–4–8b [1990], provides that decisions affecting promotions shall be made upon the basis of "seniority, qualifications and ·evaluation of past service." Moreover, that statute provides that decisions concerning the "reduction in work force of service personnel shall be made on the basis of seniority [.]" Nevertheless, that statute, as it pertains to this case, is rather unspecific as to how the seniority rights of service employees are actually determined. Indicating that a service employee's seniority rights begin when the employee enters into his or her "assigned duties," W. Va. Code, 18A–4–8b [1990], states, in addition, that "[t]he seniority of any such service personnel shall be determined on the basis of the length of time the employee has been employed by the county board of education within a particular job classification." No specific provision is made in that statute with regard to the resurrection of seniority acquired by a service employee prior to a voluntary resignation.

Importantly, the predecessor of W. Va. Code, 18A–4–8b [1990], contained provisions relating to professional, as well as service, employees of county boards of education. As the prior statute indicated: "The seniority of professional personnel shall be determined on the basis of the length of time the employee has been professionally employed by the county board of education." That language,

comparable to the above language concerning service employees, was determined in *Triggs v. Berkeley County Board of Education*, 188 W.Va. 435, 425 S.E.2d 111 (1992), to be unclear as to "what happens to the seniority of a person who voluntarily resigns ... and is subsequently reemployed by the same board of education." 188 W.Va. at 440, 425 S.E.2d at 116.

In *Triggs*, a full-time teacher employed by the Berkeley County Board of Education voluntarily resigned from her employment and, several years later, was rehired as a substitute teacher. Upon subsequently being denied a full-time position, the teacher filed a grievance, claiming that her rehiring resurrected her seniority acquired during her previous full-time employment. Affirming a ruling adverse to the teacher, however, this Court, in *Triggs*, held that the West Virginia Legislature "did not intend seniority rights to be retained by a teacher who voluntarily resigns or retires." 188 W.Va. at 441, 425 S.E.2d at 117. Nevertheless, the holding, in *Triggs*, was qualified by the following language: "It is further noted that this opinion shall have no retroactive application and those school employees who were *awarded seniority* after a break in service prior to our decision in this case shall retain such seniority." 188 W.Va. at 442, 425 S.E.2d at 118. (emphasis added).

Significantly, following the decision of this Court in *Triggs*, the West Virginia Legislature promulgated W. Va. Code, 18A–4–7b [1993], which provides for the retention of seniority rights by a professional school employee who voluntarily terminates his or her employment. As W. Va. Code, 18A–4–7b(c) [1993], provides:

Any professional employee whose employment with a county board of education is terminated either voluntarily or through a reduction-in-force shall, upon reemployment with the same board of education in a regular full-time position, receive credit for all seniority previously accumulated with the board of education at the date the employee's employment was terminated.

By contrast, no such provision has been promulgated with regard to school service employees. *See W. Va. Code*, 18A–4–8b

[1996], and *W. Va. Code,* 18A–4–8g [1996]. Moreover, the principles of *Triggs,* declaring no right to such seniority, have been applied to service employees, prior to this case, by the West Virginia Education and State Employees Grievance Board. *See Chapman v. Webster County Board of Education,* No. 92–51–349 (1993).

With that legal background in mind, it must be emphasized that, in this case, the West Virginia Education and State Employees Grievance Board found that the appellee simply made a clerical error concerning the determination of the appellant's seniority and that, because of that error, the appellant was able to survive reductions-in-force with regard to school years 1991–92, 1992–93 and 1993–94. Those findings of the Grievance Board were supported by Mercer County School Superintendent Deborah Akers who testified as follows during the Level IV hearing:

Q. Can you explain why she would not have been reduced in force during those years . . . ?

A. Well, the only explanation that I can have for that is that it's simply the information that was on the computer listing, which was used when decisions were made, must have been erroneous . . . there was never any discussion within the staff or any decision made, that there would be credit given for split seniority for service personnel, so there must have been a wrong date on that computer listing that just got carried forward every year.

As can be seen, the latter portion of that testimony also supports the determination of the West Virginia Education and State Employees Grievance Board that the appellee had formulated no policy of crediting seniority acquired by a service employee prior to a voluntary resignation. Thus, the circumstances herein fall outside of the admonition in *Triggs,* set forth above, that service employees who have been "awarded" such seniority should be able to retain that seniority. As the Grievance Board's decision in this case states: "[T]here was no such policy and no administrator 'credited' the [appellant] with the prior experience."

A careful examination of the record thus reveals that a clerical error was made by the appellee concerning the appellant's determination of seniority and that the error was subsequently corrected. Before the correction, however, the appellant benefited from the error with regard to the reductions-in-force. Nevertheless, pursuant to the above authorities and the evidence herein, the West Virginia Education and State Employees Grievance Board properly concluded that January 19, 1987, was the correct beginning date of the appellant's employment for purposes of seniority and that the appellant was not entitled to credit for the 1979–84 period.

Accordingly, the final order of the Circuit Court of Kanawha County, affirming the decision of the Grievance Board, is affirmed.

Affirmed.