414 S.E.2d 630

**The BOARD OF EDUCATION OF the COUNTY OF WOOD, a West Virginia Statutory Corporation, Petitioner, Appellee,**

v.

**Donald ENOCH, Respondent, Appellant.**

**No. 20289.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided Feb. 6, 1992.

Modified March 13, 1992.

Howard E. Seufer, Bowles Rice McDavid Graff & Love, Parkersburg, for appellee.

Joseph P. Albright, Jr., Albright, Bradley & Ellison, Parkersburg, for appellant.

NEELY, Justice:

Donald Enoch brought a grievance against the Wood County Board of Education to the West Virginia Education and State Employees' Grievance Board, alleging that Mr. Enoch was improperly denied employment as a special summer program teacher at the Martin School in Parkersburg. The hearing examiner granted Mr. Enoch's grievance and ordered the Board of Education to pay the appellant back wages and benefits. The Board of Education sought review in the Circuit Court of Wood County, which found that the hearing examiner's decision "[was] clearly wrong and contrary to law and even seems to have been capricious." Mr. Enoch now appeals the order of the circuit court reversing the decision of the West Virginia Education and State Employees' Grievance Board. We affirm the circuit court.

## I.

The Martin School is a special education school devoted primarily to mentally retarded students. Federal law requires that the Wood County Board of Education provide certain seriously handicapped students with education and related services for a period that continues beyond the end of the traditional 180 day school year. *See* 20 U.S.C. § 1400 *et seq. See also Armstrong v. Kline,* 476 F.Supp. 583 (E.D.Pa.1979). The school may not charge tuition or fees. The purpose of this extended program is to prevent backsliding among students who would probably otherwise regress during a long summer vacation. Wood County provided such a program at the Martin School from 12 June 1989 to 21 July 1989.

Mrs. Marie Held, the principal of Martin School, posted the vacancies for the special summer program in May, 1989.[1] Principal Held then conducted a thorough review of the applicants for the positions, and particularly considered the relationships that the Martin School students had with the applicants. Thus, applicants who had already developed relationships with students in small classroom settings were given preference over appellant, who taught during the regular school year at a different school.

## II.

Appellant contends that *W. Va. Code,* 18-5-39 [1931], governs the hiring decisions made by Principal Held and that under this section his summer school seniority required Principal Held to hire him. *W. Va. Code,* 18-5-39 [1931], provides:

Inasmuch as the present county school facilities for the most part lie dormant and unused during the summer months, and inasmuch as there are many students who are in need of remedial instruction and others who desire accelerated instruction, it is the purpose of this section to provide for the establishment of a summer school program, which program is to be separate and apart from

1. The openings could not be posted sooner, nor could the extended duties simply be included in the contracts of the regular teachers at Martin School because the needs of the children vary greatly from year to year. As such, *the school first determines the needs for its students,* and then posts the vacancies.

the full school term as established by each county.

The board of education of any county shall have authority to establish a summer school program utilizing the public school facilities and to charge tuition for students who attend such summer school, such tuition not to exceed in any case the actual cost of operation of such summer school program: Provided, That any deserving pupil whose parents, in the judgment of the board, are unable to pay such tuition, may attend at a reduced charge or without charge. The county board of education shall have the authority to determine the term and curriculum of such summer schools based upon the particular needs of the individual county. The curriculum may include, but is not limited to, remedial instruction, accelerated instruction, and the teaching of manual arts. The term of such summer school program may not be established in such a manner as to interfere with the regular school term.

The county boards may employ as teachers for this summer school program any certified teacher. Certified teachers employed by the county board to teach in the summer school program shall be paid an amount to be determined by the county board and shall enter into a contract of employment in such form as is prescribed by the county board: Provided, That teachers who teach summer courses of instruction which are offered for credit and which are taught during the regular school year shall be paid at the same daily rate such teacher would receive if paid in accordance with the then current minimum monthly salary in effect for teachers in that county.

Any funds accruing from such tuitions shall be credited to and expended within the existing framework of the general current expense fund of the county board.

Notwithstanding any other provision of this code to the contrary, *the board shall fill professional positions estab-*

*lished pursuant to the provisions of this section on the basis of certification and length of time the professional has been employed in the county's summer school program.* In the event that no employee who has been previously employed in the summer school program holds a valid certification or licensure, a board shall fill the position as a classroom teaching position in accordance with section eight-b [§ 18A–4–8b], article four, chapter eighteen-a of this code. [Emphasis added.]

The Board of Education contends that the vacancies at Martin School were not such as were contemplated in *W. Va. Code,* 18–5–39 [1931], and were properly filled under *W. Va. Code,* 18A–4–8b(a) [1988], which provides in pertinent part:

A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications.[2]

*W. Va. Code,* 18–5–39 [1931] provides for traditional summer school. The statute was enacted to take advantage of empty schools and to provide extra instruction for students in need. The Legislature established the summer school as separate and apart from the regular school term. Under the summer school statute, the Board of Education could charge tuition, determine the term of the summer school and set the curriculum of the summer school based upon the needs of a particular county.

The program offered at the Martin School in the summer of 1989 was not the traditional summer school contemplated by this statute. Federal and state law required free instruction for some of the Martin School students beyond the end of the school year, and the curriculum was based upon federal and state policies that require the extended year program to offer individualized instruction.

The Wood County Board of Education does provide a traditional summer school

**2.** In 1990, the Legislature moved the relevant provisions of this section to *W. Va. Code,* 18A–4–7a [1990]. The new statute also requires the school board to select the applicant with the highest qualifications.

program at Parkersburg High School, which complies with *W.Va.Code*, 18–5–39 [1931]. The Board provides the special summer program at Martin School, however, in compliance with applicable state and federal law. Accordingly, we find that *W.Va.Code*, 18A–4–8b(a) [1988] governs the hiring for summer programs established pursuant to these other requirements of federal and state law.

### III.

■ *W.Va.Code*, 18A–4–8b(a) [1988] requires the Board of Education to fill positions based on the qualifications of the applicants. As we stated in Syllabus Point 1 of *Dillon v. Board of Education of Wyoming County*, 177 W.Va. 145, 351 S.E.2d 58 (1986):

> Under W.Va.Code, 18A–4–8b(a) (1983), decisions of a county board of education affecting teacher promotions and the filling of vacant teaching positions must be based primarily upon the applicants' qualifications for the job, with seniority having a bearing on the selection process when the applicants have otherwise equivalent qualifications or where the differences in qualification criteria are insufficient to form the basis for an informed and rational decision.

In this case, Principal Held undertook an extensive review as part of the hiring process. She talked to the applicants by telephone, reviewed personnel files, reviewed other information provided by the personnel department, and interviewed each candidate. After this, Ms. Held developed a matrix that included 40 different categories to make her personnel decisions.

■ We stated in Syllabus Point 3 of *Dillon* that:

> County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.

The review we have undertaken shows that Principal Held diligently, professionally and reasonably attempted to hire the best qualified teachers among the available applicants.[3]

■ A board of education making a hiring decision should use its best professional judgment to select the applicant *best suited to the needs of the students* based on qualifications and evaluations of the applicants' past service. The Circuit Court was correct in finding that the Wood County Board of Education properly applied *W.Va. Code*, 18A–4–8b(a) [1988] in the hiring of teachers for the summer session of 1989 at Martin School. Only when all other factors are equal should a board of education look to seniority.

### IV.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

---

**3.** Mr. Enoch suggests that it was unfair of the Board to consider factors which it did not list in the posting of the opening. In particular, he suggests that the Board is using his lesser abilities at sign language as a pretext not to hire him. However, this seems to us to be a legitimate consideration in the hiring process when a significant number of the children are deaf. Contrary to appellant's contention, we have never held that a school board must list specifically in the job posting each and every factor that it might consider as a part of the hiring process. In *Dillon*, we attempted only to prevent pretextual requirements made to further cronyism. This is certainly *not* the case when the Board requires a high proficiency in signing for those teachers who will be working with deaf, retarded students.