446 S.E.2d 487

Gwen LUCION, et al., Petitioners
Below, Appellees,

v.

McDOWELL COUNTY BOARD OF
EDUCATION, Respondent
Below, Appellant.

No. 21897.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 19, 1994.

Decided Feb. 17, 1994.

Dissenting Opinion of Justice
McHugh July 20, 1994.

John Everett Roush, Charleston, for appellees.

Robert E. Blair, Welch, for appellant.

## PER CURIAM:

The McDowell County Board of Education (hereinafter the Board) appeals a decision of the Circuit Court of McDowell County holding that the Board should follow the reduction in force provisions of *W.Va.Code* 18A–4–8b [1990] in order to decrease service personnel employment costs.[1] In April 1989, in an effort to reduce employment costs because of declining student enrollment, the Board terminated the employment contracts of 57 school service personnel, the appellees in this action, and issued the appellees new contracts for the 1989–90 school year with reduced employment terms and proportional decreases in salary.[2] After their grievance

---

1. Although *W.Va.Code* 18A–4–8b was amended in 1990, the applicable provision was in effect when this case arose.

2. The appellees are: Judy Crabtree, Patsy Caceamo, Albert Sheets, John Adams, James Rasnake, Earl Muncy, Jerry Lockhart, David Rose, David Gates, James Lawson, Vernal Carrington, Thurman Martin, Jonnie H. Cook, Phyllis Rice, Donal Hastings, Thomas Parish, Grant Thompson, Tom Fanning, Harry Rushbrook, Tommy Brown, Charles White, Emory Zimmerman, Christopher Jennings, Rudolph Marshall, Antonio Mosko, Tevis Marshall, William Powell, Edwin Egleson, Ricky Blevins, Sammy Owens, Lewis Lambert, John Roark, Wayman Lambert, Donald Sizemore, Orban Porterfield, Danny Bridgeman, Edward Hughes, Neil McCall, Nick Parker, James Fowler, Terry Price, Claudette Egleson, Imogene Coleman, Robert Alley, Brenda Wright, Drema Dillon, Dreama Thorn, Shirley Dash, Helen Hunt, Lawrence Rose, Howard Rose, Fred Smith, Michael Fields, Timothy Barker, James Kelly, Glen Shoun and John Wilson.

Although the case is styled under Gwen Lucion's name, she and Shirley Hillyer acted as the appellees' representatives and were not adversely affected by the Board's actions. Ms. Lucion's status became clear after the start of the Level IV hearing before the West Virginia Education and State Employees Grievance Board and no change in the case style was deemed necessary.

was rejected by the West Virginia Education and School Employees Grievance Board, the circuit court, on appeal, found for the appellees. Given the circumstances of this case, we find that the Board complied with the termination procedures set out in *W.Va.Code* 18A–2–6 [1989], and reverse the decision of the circuit court.

In April 1989, the appellees received notice that Superintendent Kenneth Roberts would recommend the termination of their employment contracts. The terminations were designed to reduce employment costs because of an expected decline in 1989–90 school year operating funds caused by decreased student enrollment. The appellees are service personnel whose contract employment terms for the 1988–89 school year exceeded 200 days.[3] At the appellees' request, the Board held a hearing of April 18, 1989. After the hearing, the Board voted to terminate the appellees' contracts and to "reinstate" the appellees to identical contracts except with reduced employment terms. Most of the appellees' employment terms were reduced from 261 days to 240 days with a proportional decrease in salary.[4]

Alleging that the Board acted improperly in reducing their employment terms, the appellees filed a grievance. After their grievance was waived at Levels I, II and III, a Level IV hearing was held before the West Virginia Education and State Employees Grievance Board. Based on *Bd. of Educ. of the County of Fayette v. Hunley,* 169 W.Va. 489, 288 S.E.2d 524 (1982), the Level IV hearing examiner found that the Board had followed statutory requirements to terminate the appellees' contracts and rejected the appellees' argument that the Code requires the Board to follow the reduction in force provisions of *W.Va.Code* 18A–4–8b [1990].[5] On appeal, the circuit court distinguished *Hunley* as a "procedural rights" decision that statutory changes had rendered inapplicable, and found that the Board's only option to reduce employment costs of service personnel was to eliminate positions. The circuit court reinstated the appellees' 1988–89 contracts with full compensation and other benefits.[6] The Board then appealed to this Court.

I

The central question in this case concerns the options available to a board of education to cut costs arising from the employment of service personnel. The appellees maintain that because of their continuing employment contacts (*W.Va.Code* 18A–2–6 [1989]) and the non-relegation clause (*W.Va.Code* 18A–4–8 [1990]), the Board's only option when seeking to decrease service personnel employ-

3. Although at the Board's hearing, the appellees' lawyer alleged that the Board failed to consider seniority when it terminated the contracts, the hearing's record does not indicate the seniority of the appellees or the seniority of the service personnel whose contracts were not terminated. Apparently except for the chief bus operator whose job was posted because he was retiring, the contracts of all service personnel with 261-day employment terms were terminated.

4. The following are exceptions to the general pattern: the 246-day employment term of Tom Fanning was reduced to 240 days; and, the 261-day employment terms of John Roark, William Powell and Shirley Dash were reduced to 200 days.

In addition, although the petition to circuit court alleges that the employment terms of Elizabeth Handy and Jimmy Hart (or Jimmy Hunt) were reduced, neither is listed as a petitioner/appellee. The record of the Board's April 18, 1989 hearing indicates that Ms. Handy was present as a petitioner and that her employment term was reduced from 220 days to 200 days. The record also indicates that Jimmy Hart (or Jimmy Hunt)'s name was removed from the list of petitioners because his employment term was not reduced.

No information on the seniority of these service personnel was presented.

5. Although the appellees at the Level IV hearing asserted that if their positions were terminated, the Board, pursuant to *W.Va.Code* 18A–4–8b(b) [1990], should have posted the vacant positions, the appellees did not request position posting because of the number of positions involved.

6. On appeal, the Board alleges that because the circuit judge's wife was employed by the Board, he should have recused himself. Apparently, the circuit judge informed the parties of his previous representations, and according to the appellees' brief, also informed the parties of his wife's employment. In any case, the judge's wife was not employed by the Board as a service employee; the Board should have known who it employs; and, if necessary, the Board should have accepted the circuit judge's offer of recusal.

ment costs is to follow the reduction in force provisions of *W.Va.Code* 18A–4–8b [1990]. Although we acknowledge that the legislature has given substantial protection to service personnel, this protection does not require the Board to eliminate jobs rather than modifying the employment terms of the existing jobs.

■ This Court consistently has acknowledged that "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syllabus Point 3, *Dillon v. Bd. of Educ. of County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 (1986); *Triggs v. Berkeley County Bd. of Educ.*, 188 W.Va. 435, 445, 425 S.E.2d 111, 121 (1992); *Bd. of Educ. of County of Wood v. Enoch*, 186 W.Va. 712, 414 S.E.2d 630 (1992); Syl.Pt. 3, *Pockl v. Ohio County Bd. of Educ.*, 185 W.Va. 256, 406 S.E.2d 687 (1991).

■ A board of education has the discretion to determine the number of jobs for and the employment terms of a board's service personnel, provided that the requirements of *W.Va.Code* 18A–4–8 [1993] are met. When a board of education seeks to reduce employment costs, the board may decide that the schools' best interests require either the elimination of some service personnel jobs or the retention of all service personnel jobs but with reduced employment terms.

■ At both the Board's hearing and the Level IV hearing, the appellees claimed that the Board acted in an arbitrary and capricious manner in reducing their employment terms because the reduced terms would result in unmet school needs and substantial overtime that would annihilate any net savings. Determinations of the number of service personnel and the length of their employment terms are primarily management decisions. Without a clear statutory requirement, such determinations should remain with a board of education. Although *W.Va. Code* 18A–4–8 [1993] requires a minimum employment term of "ten months" for service personnel, this Code section also states that a "board of education *may* contract with all or part of these personnel for a longer term. (Emphasis added.)"

■ If a board of education decides to reduce the number of jobs for service personnel, the board must follow the reduction in force procedures of *W.Va.Code* 18A–4–8b [1990].[7] If a board of education decides to reduce the employment terms for particular jobs, the board must first terminate the existing contracts by following the procedures of *W.Va.Code* 18A–2–6 [1989],[8] and second fill the job vacancies by following the procedures and requirements of *W.Va.Code* 18A–4–8b [1990].[9] In either case, a board of education

---

7. *W.Va.Code* 18A–4–8b [1990] states, in pertinent part:

Should a county board of education be required to reduce the number of employees within a particular job classification, the employee with the least amount of seniority within that classification or grades of classification shall be properly released and employed in a different grade of that classification if there is a job vacancy: Provided, That if there is no job vacancy for employment within such classification or grades of classification, he shall be employed in any other job classification which he previously held with the county board if there is a vacancy and shall retain any seniority accrued in such job classification or grade of classification.

8. *W.Va.Code* 18A–2–6 [1989] states, in pertinent part:

The continuing contract of any such employee shall remain in full force and effect except

as modified by mutual consent of the school board and the employee, unless and until *terminated with written notice, stating cause or causes, to the employee, by a majority vote of the full membership of the board* before the first day of April of the then current year . . . except that for the school year one thousand nine hundred eighty-eight—eighty-nine only, the board shall have until the fourth Monday of April, one thousand nine hundred eighty-nine, to initiate termination of a continuing contract. (Emphasis added.)

9. *W.Va.Code* 18A–4–8b [1990] states, in pertinent part:

A county board of education shall make decisions affecting promotion and filling of any service personnel positions of employment or jobs occurring throughout the school year that are to be performed by service personnel as provided in section eight [§ 18A–4–8], article

must "make decisions affecting promotion and filling of any service personnel positions of employment or jobs . . . on the basis of seniority, qualifications and evaluation of past service." *W.Va.Code* 18A–4–8b [1990].

■ In *Bd. of Educ. of County of Fayette v. Hunley, supra,* we stated that the procedures of *W.Va.Code* 18A–2–6 [1973] should have been followed when the working hours of three service employees were cut in half. Although the board of education in *Hunley* characterized their action as a transfer, we found that they "terminate[d] the contracts with the secretaries and supplant[ed] the old contracts with new half-time contracts." *Hunley,* 169 W.Va. at 492, 288 S.E.2d at 525. In the Syllabus of *Hunley,* we stated:

> When a county school board seeks to reduce the working hours of a service employee by one half, the board must comply with the procedures set out in *W.Va.Code,* 18A–2–6 [1973].

The appellees argue that *Hunley* is no longer applicable because of statutory changes. In support of their argument, the appellees cited their continuing contract (*W.Va.Code* 18A–2–6 [1989]), their non-rele-

gation clause (*W.Va.Code* 18A–4–8 [1988]) and the reduction in force provisions (*W.Va.Code* 18A–4–8b [1990]). However, none of these Code sections invalidates *Hunley. Hunley* cites the continuing contract provisions of *W.Va.Code* 18A–2–6 [1973]. *Hunley,* 169 W.Va. at 491 n. 1, 288 S.E.2d at 525 n. 1. Although the Code section containing the continuing contract was amended in 1981, 1984 and 1989, the amendments did not modify the basic substantive rights of a continuing contract.[10]

■ The non-relegation clause of *W.Va. Code* 18A–4–8 [1988] states:

> No service employee, without his written consent, may be reclassified by class title, nor may a service employee, without his written consent, be relegated to any condition of employment which would result in a reduction of his salary, rate of pay, compensation or benefits earned during the current fiscal year or which would result in a reduction of his salary, rate of pay, compensation or benefits for which he would qualify by continuing in the same job position and classification held during said fiscal year and subsequent years.[11]

four of this chapter, on the basis of seniority, qualifications and evaluation of past service.

> . . . . .

Boards shall be required to post and date notices of all job vacancies of established existing or newly created positions in conspicuous working places for all school service employees to observe for at least five working days. . . .

*See Marion County Bd. of Educ. v. Bonfantino,* 179 W.Va. 202, 366 S.E.2d 650 (1988) (posting required to fill classroom teacher vacancy).

10. Compare the 1973 version of *W.Va.Code* 18A–2–6, which is underlined, with the pertinent parts of the same 1989 Code section:

> *After three years of acceptable employment,* each ~~auxiliary and~~ service personnel employee *who enters into a new contract of employment with the board shall be granted continuing contract status:* Provided, That a service personnel employee holding continuing contract status with one county shall be granted continuing contract status with any other county upon completion of one year of acceptable employment if such employment is during the next succeeding school year or immediately following an approved leave of absence extending no more than one year. *The continuing contract of any such employee shall remain in full force and effect except as modified by mutual consent*

*of the school board and the employee, unless and until terminated with written notice, stating cause or causes, to the employee, by a majority vote of the full membership of the board before the first day of April of the then current year, or by written resignation of the employee before that date,* except that for the school year one thousand nine hundred eighty-eight—eighty-nine only, the board shall have until the fourth Monday of April, one thousand nine hundred eighty-nine, to initiate termination of a continuing contract. *The affected employee shall have the right of a hearing before the board, if requested, before final action is taken by the board upon the termination of such employment. . . .* The 1981 amendment deleted "auxiliary" personnel from coverage and made other minor changes.

11. A review of the history of the non-relegation clause negates the appellees' argument that *Hunley* is no longer applicable because of statutory changes. The basic non-relegation clause was added to *W.Va.Code* 18A–4–8 in 1977 with the underlined sections added in 1982. (In 1981, auxiliary personnel were deleted from coverage under this section.)

> No service employee, without his written consent, shall be reclassified by class title nor

Although the non-relegation clause states that a service employee may not be adversely affected economically either during a current fiscal year or in subsequent years, provided that the service employee remains "in the same job position and classification," the appellees did not continue "in the same job position." Rather, the appellees' former jobs with extended employment terms were terminated, and their new jobs had reduced employment terms. We find that because of the changes in the appellees' positions, the non-relegation clause of *W.Va.Code* 18A–4–8 [1988] does not apply.

Finally, *W.Va.Code* 18A–4–8b [1990] is applicable only after a board of education "[s]hould . . . be required to reduce the number of employees within a particular job classification. . . ." *See supra* note 4 for a more complete text.

In this case, although the Board followed the contract termination procedures of *W.Va. Code* 18A–2–6 [1989] [12], it should not have to "reinstate" the appellees to the same jobs with reduced employment terms because this "reinstatement" did not ensure that the new positions would be filled "on the basis of seniority, qualifications and evaluation of past service." *W.Va.Code* 18A–4–8b [1990]. However, at the Level IV hearing, the appellees abandoned their request to have the new jobs posted. *See supra* note 5.

## II

In Syllabus Point 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), we stated:

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.

*In accord Pockl v. Ohio County Bd. of Ed., supra,* 185 W.Va. at 259–60, 406 S.E.2d at

690–91. Based on *Hunley,* we find that the Level IV hearing examiner correctly dismissed the appellees' grievance because the Board complied with the termination procedures of *W.Va.Code* 18A–2–6 [1989].

In this case, the Board's decision that the schools needed more service employees during the school year and fewer service employees during the summer and other non-school days, is reasonable. Firing some of the service employees would have reduced the service personnel employment costs but at the expense of the ability to meet immediately the needs during the school year. From the humanitarian prospective, the firing of people in economic hard times, rather than reducing everyone's hours defeats government's implied goal of helping to provide counter cyclical employment.

For the above stated reasons, the judgment of the Circuit Court of McDowell County is reversed and the decision of the West Virginia Education and State Employees Grievance Board is reinstated.

Reversed.

McHUGH, Justice, dissenting:

I dissent from the majority opinion because I believe that the non-relegation clause found in *W.Va.Code,* 18A–4–8 [1993] has been violated in the case before us. Although I am cognizant of the economic problems facing boards of education, I disagree with the majority's contention that a board of education, in an effort to reduce employment costs, may modify employment terms without the consent of the school service personnel employee, which results in the reduction of salary, rate of pay or benefits.

The legislature obviously sought to give service personnel protection from the whims of a board of education when it enacted what is commonly known as the non-relegation

*may a service employee, without his written consent be relegated to any condition of employment which would result in a reduction of his salary earned during the current fiscal year or which would result in a reduction of his salary for which he would qualify by continuing in the same job position and classification*

held during said fiscal year *and subsequent years.*

**12.** In this case, the appellees did not raise any allegations concerning seniority of the service personnel whose contracts were terminated. *See supra* note 3.

clause found in *W.Va.Code,* 18A–4–8 [1993], which states in relevant part:

> No service employee, without his written consent, may be reclassified by class title, nor may a service employee, without his written consent, be relegated to any condition of employment which would result in a reduction of his salary, rate of pay, compensation or benefits earned during the current fiscal year or which would result in a reduction of his salary, rate of pay, compensation or benefits for which he would qualify by continuing in the same job position and classification held during said fiscal year and subsequent years.

Simply put, the non-relegation clause clearly prohibits boards of education from reducing a service employee's pay, compensation or benefits without the consent of the service employee.

This Court has previously stated that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). The non-relegation clause in *W.Va.Code,* 18A–4–8 [1993] is clear and unambiguous. Moreover, this Court has held that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." Syl. pt. 1, *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979).

With these basic principles in mind, we turn to the facts before us. The majority previously noted that the board of education terminated the employment contracts of 57 school service personnel. Subsequently, the board of education rehired the 57 school service personnel for the 1989–90 school year with reduced employment terms and proportional decreases in salary. The 57 school service personnel did not consent to the reduced employment terms and decreases in salary. Clearly, the board of education relegated the 57 school service personnel to a condition of employment which resulted in a reduction in salary without the written consent of the school personnel in violation of the non-relegation clause found in *W.Va. Code,* 18A–4–8 [1993]. The majority clearly ignored *W.Va.Code,* 18A–4–8 [1993] when it upheld the action of the board of education in the case before us.

Instead, the majority relied on *Board of Education v. Hunley,* 169 W.Va. 489, 288 S.E.2d 524 (1982) which states in the syllabus: "When a county school board seeks to reduce the working hours of a service employee by one half, the board must comply with the procedures set out in *W.Va.Code,* 18A–2–6 [1973]." However, a careful reading of *Hunley* reveals that the opinion fails to acknowledge pertinent statutory provisions such as the non-relegation clause. Therefore, the majority's reliance on *Hunley* is misplaced.

The majority attempts to carve out an economic solution for a board of education which is not authorized anywhere in Chapter 18A of the *W.Va.Code* (Chapter 18A concerns school personnel). Furthermore, there is no need for the majority to carve out a solution because the legislature gives a board of education several options when dealing with economic problems in Chapter 18A of the *Code.*

For instance, *W.Va.Code,* 18A–2–6 [1989] gives a board of education the power to terminate the continuing contract of a service personnel employee. However, this authority to terminate a contract does not enable a board of education to ignore the non-relegation clause when rehiring that employee. Additionally, a board of education may transfer an employee pursuant to *W.Va.Code,* 18A–2–7 [1990]. Lastly, in *W.Va.Code,* 18A–4–8b [1990], another provision which the *Hunley* opinion failed to mention, the legislature set forth procedures by which a board of education may reduce the number of service employees. Even those procedures have been specifically tailored to protect the service personnel. For instance, *W.Va.Code,* 18A–4–8b [1990] provides that when reducing the work force the employee with the least amount of seniority should be released from employment first. Additionally, those employees whose contracts are terminated pursuant to a reduction in force are to be put on a preferred recall list. The legislature has obviously attempted to strike a balance between protecting the rights of the school service personnel to ensure job security and

the rights of the board of education to make necessary decisions regarding employment.

I find no provision in Chapter 18A of the *W.Va.Code* which indicates that the non-relegation clause is to be ignored in situations where it is just not convenient. Therefore, it is clear that a board of education, in an effort to cut costs, may not terminate a service employee's contract without his consent in order to rehire him with reduced employment terms if the reduced employment terms result in a reduction of pay or benefits. Accordingly, the majority's blatant disregard of the non-relegation clause in *W.Va.Code*, 18A–4–8 [1993] renders the legislature's attempt to protect the school service personnel employee's job security meaningless.

Based on the foregoing, I dissent from the majority's opinion. I am authorized to state that Justice MILLER joins me in this dissent.