465 S.E.2d 910

**Sue CAHILL, Carolyn Donchatz and Sue Sommer, Appellants Below, Appellees**

v.

**MERCER COUNTY BOARD OF EDUCATION, Appellee Below, Appellant.**

No. 22808.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Dec. 13, 1995.

J.W. Barringer, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for Appellees.

Kathryn R. Bayless, Bayless, McFadden & Cyrus, Princeton, for Appellant.

PER CURIAM:

This is an appeal by the Mercer County Board of Education (hereinafter "the Board") from a July 29, 1994, decision of the Circuit Court of Mercer County in favor of the Appellees, Sue Cahill, Carolyn Donchatz, and Sue Sommer, teachers in Mercer County. The Board alleges that the lower court erroneously required it to employ the Appellees rather than the three other individuals originally assigned to the positions in question. Based upon our review of this matter, we reverse the decision of the lower court and remand with directions.

I.

On May 9, 1989, Personnel Director Dr. Stephen Akers posted job openings for grades K–4 supervisory positions and listings for general supervisors, including a general supervisor's position with responsibility in the area of Social Studies. The Appellees each filed an application for the position of Supervisor of Elementary Education, and Appellee Carolyn Donchatz also applied for the position of Social Studies Supervisor. The Board awarded the positions for Elementary Education Supervisors to Rick Ball,

Anne Krout, and Bill Sherwood.[1] The position of Social Studies Supervisor was awarded to Carol Alley.

Upon the filing of grievances by each of the Appellees, a hearing examiner remanded the matter for reevaluation by the Board, reasoning that the method initially utilized by the Board to conduct its selections was flawed and that Superintendent William Baker's personal knowledge of some of the successful applicants had played an inordinate role in his recommendation to the Board. The hearing examiner ordered the Board to "complete a thorough and objective reevaluation of the applications. . . ." The order suggested that anyone involved in the initial selection process should be prohibited from participating in the reevaluation, thus establishing an independent panel for the reevaluation.

The Board did not appeal that decision of the hearing examiner and proceeded to conduct a second evaluation of the applicants. Although he had been involved in the initial selection, Dr. Akers also participated in the reevaluation process.[2] Subsequent to this reconsideration, the original successful applicants retained their positions, and the Appellees filed a second grievance.

This second grievance was heard before an administrative law judge (hereinafter "ALJ")

on January 24, 1992. The Appellees employed Dr. Ted Viars of Salem, Virginia, as an education expert to conduct a blind study of all applications, the job announcement, and the job descriptions. Dr. Viars ranked the Appellees as the three most qualified candidates. The ALJ permitted Dr. Viars to testify at the hearing, but refused to consider his testimony as expert testimony.[3]

The Appellees also contended before the ALJ that Dr. Akers' participation in the reevaluation tainted the process to the extent that Dr. Akers personally selected the individuals comprising the reevaluation committee, assisted in the development of hypothetical questions, failed to consider the relationships between the committee members and the job applicants, and failed to schedule sufficient time for interviews and reviews of applicant resumes.

The ALJ concluded that the Board had adequately reevaluated the matter and had properly retained the three originally successful applicants. Specifically, the ALJ found that the reevaluation committee was not flawed or inadequate. The ALJ reviewed the evidence, found the reevaluation process to be reasonable, and found that the successful candidates should be retained. The ALJ specifically found that the Appel-

---

1. Mr. Sherwood's position was later eliminated.

2. Upon remand from the hearing examiner, Superintendent Baker directed Dr. Akers to conduct the reevaluation. Dr. Akers selected the individuals to serve on the reevaluation committee and assisted in the development of questions to be posed during interviews. Each member of the committee submitted a list of suggested questions to Dr. Akers, and he compiled them into final form. Dr. Akers also established the schedule of interviewing and planned to participate as a member of the committee. Due to protests from the Appellees' counsel, however, Dr. Akers removed himself from the committee prior to the interviews.

3. In discussions regarding the characterization of Dr. Viars as an expert, the Board contended that Dr. Viars had expressed an opinion about the qualifications of the candidates without having reviewed the job descriptions. Furthermore, Dr. Viars did not have the benefit of being present for the interviews. He had no familiarity with the policies of the Board and was not familiar with the West Virginia certification require-

ments for the positions in question. Thus, the ALJ did not accord his testimony expert status. In stating that decision, the ALJ explained as follows:

> Mr. Viars was called upon to express an opinion about the 'mechanics' of the reevaluation process. While counsel for the grievants, at Level IV hearing, urges that Mr. Viars' testimony be given 'expert' status the undersigned declined to do so. That decision, which was primarily based on Mr. Viars demonstrated lack of knowledge of the legal standards to be applied in county board of education professional hiring cases in West Virginia, is here affirmed. Mr. Viars testimony, however, did facilitate a detailed analysis of the process and demonstrated that it was most likely not a 'state-of-the-art' method of assessment of candidates for the positions at issue. The testimony did not, however, establish that the process was slanted toward any particular candidate or that it was inconsistent with applicable legal standards.

lees had "failed to demonstrate by a preponderance of the evidence that they were more qualified for the positions than those selected."

The lower court reversed the ALJ's decision on appeal, reasoning that the Board's reevaluation committee was not independent, that Dr. Viars should have been accorded expert status, and that the Appellees were the most qualified candidates for the positions. The Board now appeals that decision to this Court, contending that the lower court erred in reversing a decision of the ALJ which was not clearly wrong.

## II. Standard of Review

■ Appeals from the West Virginia Educational Employees Grievance Board are to be reviewed under West Virginia Code § 18–29–7 (1994).[4] *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 465 S.E.2d 399 (1995). In syllabus point one of *West Virginia Department of Health and Human Resources/Welch Emergency Hospital v. Blankenship*, 189 W.Va. 342, 431 S.E.2d 681 (1993), we explained that " '[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, et seq. (1985), and based upon findings of fact, should not be reversed unless clearly wrong.' Syllabus Point 1, *Randolph County Bd. of Ed. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989)." 189 W.Va. at 343, 431 S.E.2d at 682; *see* Syl.Pt. 1, *Ohio County Bd. of Educ. v. Hopkins*, 193 W.Va. 600, 457 S.E.2d 537 (1995); Syl.Pt. 1, *Parham v. Raleigh County Bd. of Educ.*, 192 W.Va. 540, 453 S.E.2d 374 (1994); Syl.Pt. 3, *Lucion v. McDowell County Bd. of Educ.*, 191 W.Va. 399, 446 S.E.2d 487 (1994). Questions of law

and the application of law to the facts, however, are reviewed de novo. *Martin,* 195 W.Va. at 304, 465 S.E.2d at 406.

■ The controlling statute at the time of the posting of these positions was West Virginia Code § 18A–4–8b(a) (1988)[5], which provided, in pertinent part, that "[a] county board of education shall make decisions affecting the promotion and filling of any classroom teacher's position occurring on the basis of qualifications." According to our interpretation of that statute in syllabus point one of *Dillon v. Board of Education,* 177 W.Va. 145, 351 S.E.2d 58 (1986):

> Under W.Va.Code, 18A–4–8b(a) (1983), decisions of a county board of education affecting teacher promotions and the filling of vacant teaching positions must be based primarily upon the applicants' qualifications for the job, with seniority having a bearing on the selection process when the applicants have otherwise equivalent qualifications or where the differences in qualification criteria are insufficient to form the basis for an informed and rational decision.

177 W.Va. at 149, 351 S.E.2d at 62.

## III. Qualifications

The qualifications of the various candidates in the case sub judice were submitted and reviewed at the several levels of grievance through which this matter has traversed. A review of those records establishes that Appellee Carolyn Donchatz had twenty-three years of teaching experience, eighteen of which were in Mercer County. She had an undergraduate degree in Elementary Education with a specialization in Social Studies.

---

4. West Virginia Code § 18–29–7 provides that decisions of the hearing examiner in education employee grievance matters shall be appealable to the circuit court based on grounds that the hearing examiner's decision:
   (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and

substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
   *Id.*

5. Although this statute was amended in 1990, the parties agree that the quoted version of the statute controls the resolution of this matter.

She also had a Master's Degree in Reading, plus thirty-three additional graduate hours. She was certified in Elementary Education 1–8, Social Studies 7–9, and was a Reading Specialist in K–12. Mrs. Donchatz also had extensive experience in the formulation of curriculum for the Mercer County school system.

Appellee Sue Cahill had eighteen years teaching experience in Mercer County, had a degree in Elementary Education, and a Master's Degree in Educational Supervision plus thirty additional graduate hours. She was certified in Elementary Education 1–9 with a specialization in Social Studies. Appellee Sue Sommer had sixteen years experience, ten of which were in Mercer County. She had a degree in Elementary Education and a Master's Degree in Education with a concentration in reading and minor concentration in speech/communication. She is certified in Elementary Education 1–8, Speech 1–9, English 7–12, and Reading Specialist K–12.

Carol Alley, the successful candidate for the Social Studies Supervision position, had four years of experience in the Mercer County gifted program and ten years overall experience. She had no graduate hours in Social Studies and no certification beyond the ninth grade. She had been previously employed as a supervisor on Superintendent Baker's staff and had compiled curriculum, including Social Studies curriculum, while employed in that position.

Anne Krout, a successful applicant, had twelve years teaching experience. She had a degree in Elementary Education with a specialization in Early Childhood Education and a Master's Degree in Speech Communication. She is certified in Early Childhood Education K–9. Rick Ball, another successful applicant,

had seven years teaching experience and had a degree in Elementary Education with specialization in Early Childhood Education. Mr. Ball also had a Master's Degree in Elementary Education with Specialization in Instructional Planning plus forty-five additional graduate hours. He was certified in Elementary Administration K–8 and had served as a principal at two elementary schools in Bluefield, West Virginia.

■ The final resolution of this matter must depend upon the qualifications of the candidates. That determinative issue became obfuscated by the turmoil over the characterization of an expert witness and the ancillary issues of whether the second evaluation process was flawed. The ALJ stated that the Board's reevaluation of the candidates was reasonable and adequate and also stated that the Appellees failed to demonstrate that they were more qualified than the individuals chosen.[6] The lower court specifically found in its July 29, 1994, order, however, that the Appellees "demonstrated by a preponderance of the evidence that they were more qualified for the positions than those selected. The decision of the Chief Administrative Law Judge was clearly wrong in view of the reliable, probative and substantial evidence on the whole record." In reversing the decision of the ALJ, the lower court failed to provide a foundation for its conclusion that the ALJ's factual findings regarding the qualifications of the candidates were clearly wrong. We recently recognized in *Mingo County Board of Education v. Surber*, 195 W.Va. 279, 465 S.E.2d 381 (1995), that "[b]ecause the circuit court's order failed to explain the reason for its determination, we are unable to address the circuit court's concerns and we decline to speculate what they might be." *Id.* at 282, 465 S.E.2d at 384.

6. Although the West Virginia Code § 18A–4–8a, applicable in the present case, did not provide specific guidance for the assessment of "qualifications" of professional personnel, the new version of that section, West Virginia Code § 18A–4–7a (1990) does provide such guidance. Where one or more permanently employed instructional personnel apply for a classroom teaching position, the new statute states that consideration shall be given to each of the following: Appropriate certification and/or licensure; total amount of teaching experience; the existence of teaching experience in the required certification area; degree level in the required certification area; specialized training directly related to the performance of the job as stated in the job description; receiving an overall rating of satisfactory in evaluations over the previous two years; and seniority.

■ We therefore find it necessary to remand this matter for additional consideration by the lower court. Upon remand, the lower court must be cognizant of the discretion properly exercised by the Board in hiring determinations. As we explained in syllabus point three of *Dillon*, "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." 177 W.Va. at 146, 351 S.E.2d at 59.

To preserve the opportunity for meaningful appellate review, the lower court should provide some rationale for its determination that the ALJ was clearly wrong in its factual finding that the candidates presently occupying the positions were the most qualified candidates. Upon remand, that factual finding must be affirmed unless the lower court, upon thorough evaluation, finds it to be clearly wrong.[7] We thus remand to provide the lower court with the opportunity to properly assess the qualifications matter in accordance with the standard of review articulated in West Virginia Code § 18–29–7.

## IV. Adequacy of Reevaluation Process

■ The Appellees' assertion that the Board failed to adequately reevaluate the candidates pursuant to the prior order of the hearing examiner is a legal issue to be reviewed de novo by this Court. *See Martin*, 195 W.Va. at 309, 465 S.E.2d at 411. Upon remand[8] from the hearing examiner, the Board endeavored to select a committee consisting of individuals whose expertise qualified them to select the best applicants and whose members were capable of acting independently and objectively. That reevaluation committee consisted of six individuals possessing advanced degrees and many years of experience in public education. In response to the order of the hearing examiner, the Board determined that its usual method of selection would be altered to comply with the requirement of an independent evaluation. Thus, the formation of a committee represented a deviation from the normal selection procedure, typically involving interviews of candidates by the superintendent after an initial screening of credentials and application materials. Rather than relying upon the judgment of the superintendent, the reevaluation process delegated authority to the committee to assess the qualifications of the candidates, through evaluation of written application materials and personal interviews, and to offer a recommendation.

As the Appellees contend, some committee members were indeed familiar with some applicants. The Board emphasizes that the Mercer County school system is rather small and that it is not surprising that the committee members were at least familiar with some candidates.[9] Throughout the proceedings, however, there has been no demonstration that any committee member was prejudiced toward or against any candidate, that any personal knowledge of the candidates influenced a decision, or that any member acted in a biased or inappropriate fashion.

The Appellees also contend that the participation of Dr. Akers evidences the inadequacy of the reevaluation process. In the first

7. Pursuant to West Virginia Code § 18A–4–8b(a) and syllabus point one of *Dillon*, as quoted above, positions are to be filled on the basis of qualifications, with seniority having a bearing where the differences in the applicants' qualification criteria are insufficient to form the basis for a selection. 177 W.Va. at 146, 351 S.E.2d at 59. Thus, in the present case, if the qualifications are found to be equivalent, the greater seniority of the Appellees would form the basis for a decision in their favor.

8. While the initial remand by the hearing examiner may have been in error, the Board did not appeal that decision, and the propriety of that remand is therefore not before this Court.

9. Committee member and teacher Martha Draper was cited by the Appellees as an example of an unacceptable member due to her social friendship with Anne Krout, a successful candidate. Ms. Draper acknowledged that she knew Ms. Krout, but did not describe herself as a friend. Ms. Draper also knew Appellee Ms. Cahill, and Ms. Draper's daughter had dated Ms. Sommer's son.

selection process, Dr. Akers accepted, in his position as Personnel Director, the application materials originally submitted by the candidates. He had no substantial involvement in that initial selection process, did not conduct interviews, and did not assess the qualifications of the candidates. The lower court found, however, that due to that limited involvement in the initial determination, he should not have selected the members of the reevaluation committee or assisted in the development of questions for interviews.[10]

■ As we explained above, county boards of education are accorded substantial discretion in issues involving the performance of their selection responsibilities. *Dillon*, 177 W.Va. at 146, 351 S.E.2d at 59, Syl.Pt. 3. We also stated the following in syllabus point four of *Board of Education of the County of Wood v. Enoch*, 186 W.Va. 712, 414 S.E.2d 630 (1992):

> A board of education making a hiring decision under *W.Va.Code*, 18A–4–8b(a) [1988], should use its best professional judgment to select the applicant best suited to the needs of the students based on qualifications and evaluations of the applicants' past service. Only when all other factors are equal should a board of education look to seniority.

*Id.* at 714, 414 S.E.2d at 632. In *Tenney v. Board of Education of the County of Barbour*, 183 W.Va. 632, 398 S.E.2d 114 (1990), we emphasized that the "selection of candidates for educational positions is not a mechanical or mathematical process." *Id.* at 634, 398 S.E.2d at 116. No formulaic principles attach to the process, and the county board of education, that entity in the best position to adjudge the relevant qualifications of the candidates, must be given substantial discretion.

Based upon the foregoing, we find that the reevaluation process was not flawed or inadequate, the committee was not prejudiced or

biased, and the conclusions of that committee should not be disregarded as unreliable or deficient on remand.

Reversed and remanded with directions.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

10. As the ALJ noted in his decision, the Appellees' counsel apparently interpreted the hearing examiner's remand to prohibit persons having participated in the original assessment from participating during the reevaluation. As the ALJ stated, "[t]his was clearly a suggestion and not a directive by the Hearing Examiner."