502 S.E.2d 186

Kimberly D. REECE, Petitioner Below, Appellee,

v.

BOARD OF TRUSTEES/MARSHALL UNIVERSITY, Defendant Below, Appellant.

No. 24153.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1998.

Decided March 17, 1998.

Darrell V. McGraw, Jr., Attorney General, Mary Roberta Brandt, Assistant Attorney General, Charleston, for Appellant.

Rosalee Juba–Plumley, Ross & Juba, Eleanor, for Appellee.

PER CURIAM:[1]

■ This is an appeal by Marshall University from a judgment of the Circuit Court of Kanawha County directing Marshall University to reinstate a dismissed employee, Kimberly D. Reece to her position at the University.[2] In ordering the reinstatement, the circuit court reversed a decision of an administrative law judge in a grievance procedure instituted by Ms. Reece. The circuit court concluded that Marshall University had failed to establish good cause for the dismissal of Ms. Reece. After reviewing the issues raised, as well as the documents filed, this Court concludes that the Circuit Court of Kanawha County erred in reversing the decision of the administrative law judge. The judgment of the circuit court is, therefore, reversed, and this case is remanded with directions that the decision of the administrative law judge be reinstated.

In late 1992, Marshall University hired Kimberly Reece, a single parent, to serve as an "area coordinator" for three dormitories at the University. As an area coordinator, Ms. Reece's role was to supervise the staff of three dormitories and to serve as a role model for the students who resided in the dormitories. Ms. Reece was provided with an apartment in one of the dormitories within her area of responsibility.

On a number of occasions, after assuming her position, Ms. Reece was cited by her supervisors for violating policies and rules and regulations of Marshall University and also for failing to perform her duties in an appropriate manner. Shortly thereafter, while on probationary status, Ms. Reece became embroiled in a controversy, referred to as the T-shirt incident, with the male students in the dormitory where she lived, which incident, together with her previous misconduct, culminated in her termination by letter dated December 8, 1993.[3]

Ms. Reece filed a grievance following her termination, and ultimately, on October 17, 1994, an administrative law judge, after examining the extensive evidence adduced in

1. We point out that a per curiam opinion is not legal precedent. See Lieving v. Hadley, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992)

2. The appellant is technically "the University of West Virginia Board of Trustees, acting for Marshall University", but to simplify the discussion, the appellant will be referred to as Marshall University, Marshall, or the University.

3. The T-shirt incident was an uproar which erupted after male students within Ms. Reece's area of responsibility had designed and purchased a T-shirt for their intramural team. This T-shirt graphically displayed a naked man and woman, in sexually suggestive positions compounded with stereotypical sexist imagery. When Ms. Reece learned of the creation and existence of the shirts, she prepared and placed a poster critical of the students' behavior outside her office, rather than personally dealing with the offenders or taking the matter to their resident advisor.

The posting of her sign provoked a "poster war" within the dormitory and resulted in escalating tension. Ultimately, Ms. Reece's supervisor requested that she remove her sign and reminded her that she was responsible for both the male and female students in the facilities subject to her supervision. Ms. Reece did remove her sign.

the case, issued a written decision affirming the termination. Among other things, the administrative law judge found:

> During Grievant's [Ms. Reece's] first eleven months of employment she was on probation. She was periodically evaluated by her immediate supervisors and generally received unfavorable ratings leading to her being given various periods for improvement. At the beginning of June 1993, Grievant had improved her performance to the point where she was removed from probation.
>
> During the period of Grievant's probationary status, she received numerous counselings from her supervisor. She had also received two written warnings based upon her performance and her evaluations were typically in the range of "meets expectations or "occasionally below expectations."
>
> Grievant was issued a written warning on September 14, 1993, for having allowed an underage student to drink beer during a party that she had hosted and also for her recurring use of bad judgment.
>
> \* \* \*
>
> Grievant was responsible for the publication of a monthly RA Newsletter. Grievant failed to have said publication timely produced during her tenure or to keep her supervisor apprised of the progress she was making toward having the newsletter published.
>
> Grievant was given a letter of reprimand for inappropriate and unprofessional behavior as a result of being notified that a group of male students had a T-shirt printed which was in questionable taste due to its sexually explicit graphics.

The administrative law judge concluded that the evidence showing these things established good cause for Marshall's termination of Ms. Reece's employment.

Ms. Reece appealed the administrative law judge's decision to the Circuit Court of Kanawha County, and, as previously stated, the circuit court, after reviewing the case, reversed the decision and directed that Ms. Reece be reinstated to her position at Mar-

shall University. The circuit court, in concluding that reversal was appropriate, focused on two findings of the administrative law judge, Ms. Reece's failure to prepare the required newsletters on time and the so-called "T-shirt" incident. The circuit court found that staff and students upon whom Ms. Reece was dependent for articles for the newsletter did not wish to contribute the necessary material and that differences of opinion with the Marshall administration precluded her from using other material. As a consequence, the court concluded that Ms. Reece's failure to produce the newsletter "at most constituted a mere technical violation without wrongful intention and certainly did not rise to the level of misconduct" which would justify termination of Ms. Reece's employment. Relating to the T-shirt incident the court found:

> This Court finds that based upon the evidence surrounding the t-shirt incident the petitioner's handling of it was ineffective. Rather than handling the event in an objective, professional manner, the petitioner took it personally, apparently perceiving it as an act of sexual harassment toward herself and other female staff and students. However, this Court finds there was no wrongful intent on the part of petitioner. She did not "incite" the staff or students or do anything which would endanger or potentially endanger their lives, rights or interests. There was no policy which she could turn to as a guide for handling this type of occurrence. Instead, she relied upon her "best judgment", which in retrospect was not optimal. Nevertheless, her involvement in the "t-shirt incident" simply did not rise to the level of misconduct justifying disciplinary action, which then led to her dismissal and the taking away of her home, benefits and the meal tickets upon which she and her kindergarten-age daughter depended.

Finally, the circuit court concluded:

> [T]he respondent [Marshall University] has failed to meet its burden of proving by a preponderance of the evidence that petitioner's dismissal was for 'good cause.'

As previously indicated, Marshall University, in the present appeal, claims that the

circuit court erred in reversing the decision of the administrative law judge and in ordering the reinstatement of Ms. Reece.

In Syllabus Point 1 of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court set forth the circumstances under which the decision of a hearing examiner in a grievance such as the one involved in the present case should be reversed. In that syllabus point, the Court stated:

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.

West Virginia Code § 18–29–7 establishes the grounds under which a circuit court judge may reverse the decision of a hearing examiner in a level 4 proceeding. *See Martin v. Randolph County Board of Education,* 195 W.Va. 297, 465 S.E.2d 399 (1995), and *Cahill v. Mercer County Board of Education,* 195 W.Va. 453, 465 S.E.2d 910 (1995). Those grounds are that the decision of the hearing examiner (i) is contrary to the law or a lawfully adopted rule or regulation or written policy, (ii) is made in excess of the hearing examiner's statutory authority, (iii) is the result of fraud or deceit, (iv) is clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (v) is arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

An examination of the decision in the present case shows that the circuit court based its decision to reverse the hearing examiner's decision on the ground that it was clearly wrong in view of the reliable, probative, and substantial evidence on the record as a whole. It, thus, appears to this Court that the real question in this case is whether the reliable, probative, and substantial evidence supports the hearing examiner's conclusion that the dismissal of Ms. Reece by Marshall University was appropriate, or whether that evidence shows that decision was clearly wrong.

In *Oakes v. West Virginia Department of Finance and Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980), and in *Guine v. Civil Service Commission,* 149 W.Va. 461, 141 S.E.2d 364 (1965), this Court indicated that a dismissal of a public employee in a case such as the one presently before the Court must be for "good cause" which, according to the Court, means "misconduct of a substantial nature directly affecting the rights and interest of the public". Trivial or inconsequential matters, or mere technical violations of a statute or official duty, without wrongful intention, are not sufficient.

The record shows that Ms. Reece worked for Marshall University for only slightly more than a year, from late 1992 until December 8, 1993. During her first eleven months she was on probation, and in that period she received generally unfavorable ratings. Only in June, 1993, approximately five months prior to her termination, was she removed from probation. Three months later, in September, 1993, she was given a written warning for having allowed an underage student to drink beer in her University apartment.[4] Because of this incident, Ms. Reece was again placed on probation—until December 15, 1993. While this probation was in effect, she became involved in the T-shirt incident.

In examining the propriety of the hearing examiner's decision in this case, the circuit court focused on whether Ms. Reece's failure to produce the newsletter and whether her

---

4. Regarding this matter, Winston Baker, Ms. Reece's supervisor, wrote her on September 14, 1993:

A then-twenty-year-old student resident, who is now employed as a Resident Advisor, was observed assisting you in carrying beer into your apartment and was present at a social event you hosted there. During this social event the underage student consumed beer that you provided. You stated that at the time of the event the student was there as your friend, not as an employee of this department. At that time West Virginia law did permit a person under 21 to possess beer, but it did not permit the distribution and consumption by a minor. Whether or not the student's possession of beer was technically legal, we agreed that it is not appropriate, under Marshall University's alcohol policies, for a professional staff member to serve beer to underage students.

involvement in the T-shirt incident justified her dismissal.

The record before the Court shows that Ms. Reece was hired not only to supervise employees who worked in the dormitories at Marshall University, but also that she was expected to counsel the employees on dormitory problems, including problems with students. She was required to implement the policies and standards set by her employer, Marshall University.

Less than three months prior to her termination, Ms. Reece allowed an underage student to drink beer in her apartment in the dormitory in clear violation of the University's rules. Previously she had violated other rules. This incident was deemed to be sufficiently serious to cause Ms. Reece to be placed on probationary status again. Finally, her involvement in the T-shirt incident placed her in an adversarial and confrontational stance *vis a vis* the students for whose behavior she was partially responsible.

Although certain of Ms. Reece's violations were, in and of themselves, of a rather technical nature, such as the keeping of a pet in the dormitory, or her use of a fire exit in a non-emergency situation, in this Court's view, the serving of beer to an underage student in the dormitory was a matter of substantial concern as was her involvement in the T-shirt incident. More importantly, the overall evidence suggests that Ms. Reece demonstrated a pattern of being unable, or unwilling, to conform her conduct to the rules of Marshall University necessitating repeated unheeded counseling by her supervisors.

The record indicates that Marshall University had a policy authorizing dismissal of an employee for "persistent inability to conform to the requirements of his or her job". That policy authorized discharge when, after repeated efforts by the University to improve performance, the employee failed to show improvement. Specifically, the policy stated employees may be discharged in the following cases:

No improvement in job performance or work habits is shown within a reasonable length of time after the supervisor has properly trained and/or appropriately disciplined the employee (by use of oral and written warnings).

This Court believes that a public employee's continuing inability to perform a job for which he or she is hired, in spite of diligent and repeated efforts by the employer to correct, counsel, and train the employee, in accordance with a clearly established and declared policy of the employer, constitutes conduct of a substantial nature which directly affects the interest of the public. This misconduct will justify termination of the employee's employment.

In view of this, this Court believes that the hearing examiner correctly concluded that the termination of Ms. Reece's employment was proper. The Court also believes that in focusing only upon two incidents rather than the overall conduct of Ms. Reece, and by ignoring evidence of serious misconduct by the employee, the circuit court erred. As a consequence, the judgment of the circuit court must be reversed.

The judgment of the Circuit Court of Kanawha County is, therefore, reversed, and this case is remanded with directions that the action of Marshall University in terminating Ms. Reece be upheld.

Reversed and remanded with directions.